Jill Allison
Investigator
Investigative Services Division
Global Investigative Services

PO Box 33094
Tulsa, Oklahoma 74153

918-672-3896 Office
918-325-0854 Mobile
866-560-0949 E-fax

jill.allison@chartisinsurance.com



## REPORT OF INVESTIGATION

| DATE: | 05/11/2012 | ISD #: | 2012012636 |
|---|---|---|---|
| TO: | Brittan Reed | INSURED: | Michael and Nancy Morrison |
| FROM: | Jill Allison | CLAIMANT: | Michael and Nancy Morrison (other claimant/driver John Branum) |
| CLAIM #: | 862847 | DOL: | 08/18/2011 |
| DOC LABEL: | INVEST - ISD/OIA REPORT | | |

### BASIS FOR INVESTIGATION

On 04/30/12, I received this private client group - claimant statement assignment due 05/11/12. On 04/30/12, upon receipt of the assignment a call was placed to Kendra at the Daniel Smolen law firm and a claimant interview set for 05/07/12. On 04/30/12, I located no police report in I-view and emailed the adjuster a request for the report and acknowledgement of this assignment. I left a voice mail message for the adjuster. On 05/01/12, I spoke to Brittan Reed about the assignment. A police report (Attachment 1) including a site diagram, was obtained. I am familiar with the accident site. .

### RESULTS OF INVESTIGATION

Daniel Smolen, attorney

Mr. Smolen advised he has made no demand and has not received a settlement offer from the other claimant, John Branum. He feels the other claimant's coverage limit is $250,000 or $500,000. Ms. Morrison has had two surgeries (shoulder, breast) as a result of the accident and may need an additional surgery (neck). Mr. Smolen advised he will provide Brittan Reed, adjuster, all medical records. Mr. Smolen advised that he is under the impression the other claimant is a plaintiff attorney in Oklahoma City, OK, although the police report lists his address in Oregon.

Claimant

The following is a synopsis of my 05/07/12, taped (Attachment 2) in-person interview with Ms. Nancy (nmn) Chandler Morrison, US citizen, Female, DOB:         /46, SSN:         5794, Home:                        , Home Telephone:

Morrison v. Chartis
Case No. 13-CV-116-JED-PJC

**Exhibit 2**

CHARTIS-0026

The meeting took place at the law office of Daniel Smolen, 701 S. Cincinnati, Tulsa, OK 74119, Telephone: 918-585-2667.

Nancy Morrison and her husband Michael Morrison own and are the insureds of vehicle she was driving on the DOI. She was alone in the vehicle, a white 2004 Porsche Cayenne; the vehicle was totaled. They have had the vehicle since 2004. The vehicle had no mechanical issues that caused or contributed to the accident. It was sunny and hot and dry on the DOI; the sun was not a factor. There was no construction in the area that caused or contributed to the accident. Ms. Morrison has been driving 50 years. She was wearing contact lenses on the DOI. She has never had her license suspended or revoked. She had on her seat belt at the time of the accident. There had been no alcohol consumption for at least 24 hours prior to the accident.

Ms. Morrison had been at a nail salon at 38th and Harvard prior to the accident and was going home, traveling NB on Harvard at the time of the accident. The accident site was 31st and Harvard Avenue, Tulsa, OK. It was about 2:49 PM and the area was commercial. Ms. Morrison was not sure of the posted speed. The traffic controls at the intersection were stop lights. There were three lanes in each direction. Her light was left-turn, yield to green. The roadway was straight. No vehicles park on the streets at the intersection. She lives close to the intersection and was familiar with the area.

Mr. Morrison advised she was NB traveling on Harvard toward the intersection at 31st, coming from 38th and Harvard. She got into the left turn lane, and there were no vehicles in front of her in her turn lane and she had her blinker on. She was stopped and was waiting to make her turn. She pulled a little into the intersection. In front of her, SB, were two oncoming lanes of traffic and a left turn lane. Her green light turned yellow and she looked to see if the oncoming traffic was stopping so she could complete her turn. There was a SB vehicle making a left-turn. As the light turned red she looked up and realized the other claimant's vehicle, a large SUV, was not going to stop and was going to hit her, which he did. He hit her without looking up, apparently. He was coming SB too fast for her to take any evasive action. She had no idea of the other claimant's speed. Upon impact, her vehicle turned 180 degrees, now facing south and still in the intersection. Her engine was pushed up into the center of the vehicle. Her whole body did a slam and then the seat belt caught her. Her neck whipped around and her right shoulder hit the steering wheel and slammed her back up against the seat. She was at that point sort of in shock and she found her cell phone under her foot and called 911, which was busy; she then called her husband.

The other claimant came up to her window and asked her what happened and she told him he had run the red light and hit her. He said, I did, and she said, yes, you did. He said she really should get out of her vehicle; it was smoking. The police, fire truck and ambulance arrived. All traffic was stopped. She got into the ambulance and was treated. Her BP was 200 over 140. Her husband arrived shortly and got into the ambulance with her. The other claimant did come into the ambulance to see if she was alright. She was shaking badly and does not recall a lot of that conversation, however. She has related all of the conversation she can recall that she had with the other claimant. Neither she nor her husband took scene photographs but they do have lots of photographs of their vehicle.

Mr. Smolen noted that the police report (Attachment 1) references the other claimant was on his cell phone at the time of the collision. The other claimant was cited for failure to stop at a red light; two witnesses listed on the police report confirmed this information. Mr. Smolen noted this is all referenced in the police report narrative.

Ms. Morrison's vehicle was damaged on the front passenger side; her vehicle was totaled. It had low mileage and not really any prior damage. Ms. Morrison talked to the police at the scene and

gave her statement. She was not cited for any improper action. There has been no court hearing that Ms. Morrison has had to appear at on the matter.

We discussed her injuries and treatment. Her husband took her home from the scene after her blood pressure came down and the ambulance personnel released her. She went the next day to her internist, Stephen Gawey. Her right shoulder hurt, this was her main pain at that time. She had x-rays of her neck and back; she had no fractures.

On the recommendation of a friend she then saw Mr. Smolen and he sent her to Dr. Perry, a chiropractor. Dr. Perry told her she needed an MRI, which she had and determined she had a bad shoulder tear. She saw an orthopedic surgeon, Kris Parchuri, who treated her, looked at her MRI and told her she had a rotator cuff tear and four disks in her neck were damaged from the accident. He told her to try PT and she did, going to Tulsa Spine and Rehab. This helped but not enough. She called Mr. Smolen who sent her to Dr. David Noneweiler. She was told she had a massive tear and needed surgery as soon as possible. She had the surgery in March 2012 on the right shoulder and has had a difficult recovery. Dr. Noneweiler recommended she have a neck MRI and they are waiting on this while her shoulder still recovers.

Her shoulder still hurts today and she has limited range of motion. She cannot hook her bra in the back or put on a belt and is not able to lift her arm up and reach her head. She cannot pick things up. Her surgical report referenced right shoulder impingement syndrome, massive rotator cuff tear. She is right handed. She has five anchors now in the right shoulder. She has lost weight going from 130 to 110 and currently weighing 115; she is 5'8". She cannot lift her grandchildren or play golf or go to Pilates anymore and she cannot garden. She does her housework with her left hand. She needs the pain in her arm to stop, hoping this will happen when her tendons heal. She is told she just has to wait for this. She was released to drive this past Friday.

Her other surgery was from her seat belt impacting her right breast. She had implants long ago and the implant was torn in the accident. She saw Dr. Greg Ratliff, a plastic surgeon. She had this repaired prior to her shoulder surgery. Her breast has recovered.

Ms. Morrison denied doing anything between the accident and her surgeries to reinjure or injure her right breast or right shoulder or neck.

Post-accident, due to the accident she has now been told her thyroid is overactive and should right itself over time. She has seen Dr. Raphael Francisco. She denied prior thyroid issues. She denied prior problems with her neck or her right shoulder or right arm, elbows, fingers hands/appendage. She had no prior implant problems.

She had left knee surgery in 2005, from wear and tear. She denied any significant medical history. She denied prior auto accidents or other trauma to her body.

Ms. Morrison does not work; she had a storage facility business in the past, which she sold.

They have no other insurance coverage for this accident.

### Observations

I arrived at the interview early to observe Ms. Morrison entering the foyer. Her walk was somewhat stilted. I noted she also had on high heels (not spiked heels but thick heels) about 2 ½ inches high. She does appear thin. She was wearing glasses and was neat in appearance. She stated her name to the receptionist and was told to proceed upstairs (17 steps), which she

ascended with no problem, holding onto the railing with her left hand. During the interview at one time, Ms. Morrison reached up with her left hand and pulled down her jacket from her right shoulder and rubbed, massaged her right shoulder area. Ms. Morrison was pleasant and would make a good witness. After the interview, I waited in my vehicle for Ms. Morrison to depart and she again walked somewhat stilted to a white Lexus, OK tag 628 HOM. She opened the vehicle door with her left hand, entered and drove away. Ms. Morrison is a white female with brown/blonde highlighted hair.

**ISO Index**

A search under Ms. Morrison's SSN, name/dob and address listed this incident/claim only.

A search under the other driver/claimant's dob/name located various prior auto, property and casualty claims – 16 – some with duplicate dates. A copy of the index (Attachment 3) is attached for review.

**Subrogation**

Per Brittan Reed, Chartis adjuster, the other claimant/driver is stating Ms. Morrison was at some fault; however our contention is he is 100 % at fault.

Jill Allison/Claims Investigator

ATTACHMENTS *

1. Official OK Traffic Collision Report
2. Audio tape – Nancy Morrison interview
3. Index

* Attachment 2 being sent to Brittan Reed; Attachments 1 and 3 sent with this report email closure and uploaded in the Wired System