IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

(1) NANCY MORRISON

              Plaintiff,

v.

(1) CHARTIS PROPERTY CASUALTY CO., a foreign
      corporation,

              Defendant.

Case No. 13-CV-116-JED-PJC

## DEFENDANT'S RESPONSE TO PLAINTIFF'S MOTION TO COMPEL

Respectfully submitted,

By    /s/ Randall E. Long
        DAN S. FOLLUO, OBA# 11303
        dfolluo@rhodesokla.com
        RANDALL E. LONG, OBA #22216
        rlong@rhodesokla.com
        RHODES, HIERONYMUS, JONES,
        TUCKER & GABLE
        P.O. Box 21100
        Tulsa, Oklahoma 74121-1100
        (918) 582-1173
        (918) 592-3390 Facsimile

## TABLE OF CONTENTS

I.    Background..................................................................................................................1

II.    Chartis has produced all of the discoverable portions of the claim
file materials.............................................................................................................3

       a.     The post-denial claim file materials are not relevant to this action......................3

       b.     Chartis retained legal counsel because it anticipated litigation
with Plaintiff, and most of the materials in the claim file were
created or obtained because of this litigation..................................................6

       c.     Plaintiff is not entitled to privileged attorney-client
communications in the claim file ....................................................................10

III.   Chartis's loss reserves do not set the "range of value" for
Plaintiff's UIM claim therefore such information is not
relevant or discoverable ........................................................................................14

IV.   Plaintiff is not entitled to discover personnel files.................................................19

V.    Plaintiff's motion is moot with regard to training and claims
handling guidelines ................................................................................................22

## **TABLE OF AUTHORITIES**

**Cases:**

*Adams v. Allstate Ins. Co.*, 189 F.R.D. 331 (E.D. Pa. 1999) .................................................. 20

*Andres v. Okla. Farm Bureau Mut. Ins. Co.*,  2012 OK CIV APP 93, 290 P.3d 15, 17 .............. 5, 19

*Andres v. Okla. Farm Bureau Mut. Ins. Co.*, 2012 Okla. LEXIS 89 (Okla. Sept. 17, 2012) ............ 5

*Baklid-Kunz v. Halifax Hosp. Med. Ctr.*,
  2012 U.S. Dist. LEXIS 158944 (M.D. Fla. Nov. 6, 2012) ...................................................... 11

*Burch v Allstate Ins. Inc.*, 977 P.2d 1057 ........................................................................ 2, 7

*Butterfly-Biles v. State Farm Life Ins. Co.*,
  2010 U.S. Dist. LEXIS 4701 (N.D. Okla. Jan. 21, 2010) ........................................................ 4

*Chandler v. Denton,* 1987 OK 38 P.2d 855 ........................................................................ 10

*Christensen v. Am. Family Mut. Ins. Co.*,
  2011 U.S. Dist. LEXIS 96620 (D. Utah Aug. 29, 2011) ......................................................... 21

*Couch v. Equity Gen. Ins. Co.*, 80 B.R. 512 (S.D. Cal. 1987) ................................................. 15

*Exchange National Bank of Chicago v. United States Fidelity & Guaranty Co.*,
  1985 WL 1773 (N.D. Ill. June 6, 1985) ............................................................................. 15

*Frontier Refining, Inc. v. Gorman-Rupp Co.*, 136 F.3d 695 (10th Cir. 1998) .......................... 6

*Hale v. A.G. Ins. Co.,* 2006 OK CIV APP 80, 138 P.3d 567  ................................................. 4

*Hickman v. Taylor*, 329 U.S. 495 (1947) ........................................................................... 6

*Higgins v. State Auto Prop. & Cas. Ins. Co.*,
  2012 U.S. Dist. LEXIS 91793 (N.D. Okla. July 2, 2012) ........................................................ 18

*Hoffman v. United Telecommunications, Inc.*, 117 F.R.D. 436 (D.Kan.1987) ......................... 8

*Ideal Elec. Co. v. Flowserve Corp.*, 230 F.R.D. 603 (D. Nev. 2005) ..................................... 11

*Indep. Petrochemical Corp. v. Aetna Cas. & Sur. Co.*, 117 F.R.D. 283 (D. D.C. 1986) .................. 16

*Janicker v. George Washington University,* 94 F.R.D. 648 (D.D.C. 1982) ............................... 7

*John B. v. Goetz*, 879 F. Supp. 2d 787 (M.D. Tenn. 2010) ................................................ 13

*Keel v. MFA Ins. Co.*, 553 P.2d 153 (Okla. 1976) ................................................................ 6

*Laney v. Schneider Nat'l Carriers, Inc.*, 259 F.R.D. 562 (N.D. Okla. 2009) ....................... 7

*LeBlanc v. Travelers Home & Marine Ins. Co.*,
  2011 U.S. Dist. LEXIS 75853 (W.D. Okla. July 13, 2011) ............................................. 16

*Leksi, Inc. v. Fed. Ins. Co.*, 129 F.R.D. 99 (D. N.J. 1989) ............................................. 16, 17

*Lindley v. Life Investors Ins. Co. of Am.*, 267 F.R.D. 382 (N.D. Okla. 2010) ............ 8, 10, 11

*Lindley v. Life Investors Ins. Co. of Am.*,
  2010 U.S. Dist. LEXIS 41798 (N.D. Okla. Apr. 28, 2010) ......................................... 10, 13

*Moss v. GEICO Indem. Co.*, 2012 U.S. Dist. LEXIS 27611 (M.D. Fla. Mar. 2, 2012) ....... 20

*Munoz v. St. Mary-Corwin Hosp.*, 221 F.3d 1160 (10th Cir. 2000) .................................. 19

*Nat'l Union Fire Ins. Co. v. Mead Johnson & Co.*,
  2011 U.S. Dist. LEXIS 122149 (S.D. Ind. Oct. 21, 2011) ............................................. 18

*Oklahoma v. Tyson Foods, Inc.*, 262 F.R.D. 617 (N.D. Okla. 2009) ................................... 7

*Porter v. Farmers Ins. Co.*, 2011 U.S. Dist. LEXIS 51336 (N.D. Okla. May 10, 2011) ....... 21

*Regan-Touhy v. Walgreen Co.*, 526 F.3d 641 (10th Cir. 2008) ......................................... 20

*Rhone-Poulenc Rorer, Inc. v. Home Indem. Co.*, 139 F.R.D. 609 (E.D. Pa. 1991) ........... 16

*Santer v. Teachers Ins. & Annuity Ass'n*,
  2008 U.S. Dist. LEXIS 21767 (E.D. Pa. Mar. 18, 2008) ............................................... 20

*Scott v. Peterson*, 2005 OK 84, 126 P.3d 1232 ............................................................. 10

*Signature Development Company v. Royal Insurance Company of America*,
  230 F.3d 1215 (10th Cir. 2000) ................................................................................... 16

*Silva v. Basin Western, Inc.*, 47 P.3d 1184 (Colo. 2002) ............................................... 17

*Sims v. Great Am. Ins. Co.*, 469 F.3d 870 (10th Cir. 2006) ........................................ 4, 10

*Sims v. Travelers Ins. Co.*, 2000 OK CIV APP 145, 16 P.3d 468 .................................... 10

*Sinclair Oil Corp. v. Texaco, Inc.*, 208 F.R.D. 329 (N.D. Okla. 2002) ............................ 13

*Stabilus v. Haynesworth, Baldwin, Johnson and Greaves*, 144 F.R.D. 258 (E.D. Pa. 1992) ........ 20

*U.S.. v. Chen,* 99 F.3d 1495 (9th Cir. 1996) .................................................................11, 12

*Union Carbide Co. v. Travelers Indem. Corp.*, 61 F.R.D. 411 (W.D. Pa. 1973) ................................. 16

*Upjohn Co. v. United States*, 449 U.S. 383 (1981) ................................................. 8, 10

*Vintage Plastics, LLC v. Mass. Bay Ins. Co.*,
   2012 U.S. Dist. LEXIS 47396 (N.D. Okla. Apr. 4, 2012) ..................................... 4, 19

*Weems v. Corr. Corp. of Am.*, 2010 U.S. Dist. LEXIS 65875 (E.D. Okla. June 30, 2010) ............. 20

*Willnerd v. Sybase, Inc.*, 2010 U.S. Dist. LEXIS 135781 (D. Idaho Dec. 22, 2010) ....................... 11

*Winton v. Bd. of Comm'rs*, 188 F.R.D. 398 (N.D. Okla. 1999) ................................................. 8

*Wolf v. Prudential Ins. Co. of Am.*, 50 F.3d 793 (10th Cir. 1995) ............................................ 4

## Statutes:

LCvR 26.4 ............................................................................................................. 8

Okla. Stat. tit. 12, § 2502 .................................................................................. 10

Okla. Stat. tit. 20, § 30.5 ..................................................................................... 5

Okla. Stat. tit. 36, § 1509 .................................................................................. 17

Okla. Stat. Tit. 36 § 3636(F)(2) ............................................................................ 2

Fed. R. Civ. P. 1 ............................................................................................... 5, 8

Fed. R. Civ. P. 26(b)(3) ......................................................................................5, 6, 19

## Other Sources:

Edna Selan Epstein, The Attorney Client Privilege and the
   Work-Product Doctrine, vol. II, p. 916 (ABA 5th ed.) ............................................ 7

Paul R. Rice, 1 Attorney-Client Privilege in the Unites States, § 5:14 (2d ed. 1999) ............. 11

Allan D. Windt, 2 Insurance Claims and Disputes 5th:
   Representation of Insurance Companies & Insureds, § 9:28 ................................................ 5

Defendant Chartis Property Casualty Co. ("Chartis") submits the following response in opposition to Plaintiff's motion to compel [Doc. 23]:

## I.   BACKGROUND

Chartis provided Plaintiff with UIM coverage with limits of Five Hundred Thousand Dollars ($500,000.00).  On August 18, 2011, she was involved in a motor vehicle accident with tortfeasor, John Branum.  Plaintiff underwent medical treatment for some injuries including a rotator cuff repair.  Six months after the accident, Plaintiff had both of her breast implants replaced and claims it was necessary because of the accident.  She underwent some physical therapy for neck stiffness and pain, but has not undergone surgery and does not plan to.  Plaintiff's medical bills approximate Fifty Thousand Dollars ($50,000.00).  She does not work so she did not seek any damages for lost wages or loss of earning capacity.  Tortfeasor Branum's liability limits are Five hundred Thousand Dollars ($500,000.00).

On August 31, 2011, Plaintiff's counsel notified Chartis that she was pursuing a med-pay and UIM claim.  Plaintiff's UIM claim was assigned to Brittan Reed, a Casualty Claims Specialist, for handling.  Mr. Reed immediately began investigating the claim relative to liability and damages.  He reviewed the police report and photographs of vehicle damage, and discussed the claim with the Safeco adjuster.  Mr. Reed also contacted Plaintiff's counsel many times over the next several months in order to obtain an update on the status of Plaintiff's medical treatment and condition.  In April 2012, Mr. Reed requested a statement from Plaintiff in order to assist in his investigation and evaluation of the injury claim.  Mr. Reed received the summary of that statement on May 11, 2012.  Safeco refused

to disclose its policy limits at that time so Mr. Reed was unable to determine whether the claim qualified for UIM coverage.

On May 29, 2012, Plaintiff sued tortfeasor Branum in state court to recover damages from him.  On July 20, 2013, Chartis received a time-limited demand for payment of UIM benefits from Plaintiff's attorney, Daniel Smolen.  In that demand letter, Plaintiff's attorney cited *Burch v Allstate Ins. Inc.*, 977 P.2d 1057, and put Chartis "on notice" that Plaintiff was demanding tender of the UIM policy limits within 30 days.  This UIM limits demand meant that Plaintiff believed her injury claim against tortfeasor Branum was worth at least One Million Dollars ($1,000,000.00).  After receiving this message, Chartis retained outside legal counsel to obtain legal advice regarding the status of Oklahoma law relative to the issues raised in that demand letter.  Chartis understood the demand letter to mean that if it did not tender the UIM limits within 30 days, then Plaintiff would file suit against Chartis.

Chartis promptly evaluated Plaintiff's claim based upon the hundreds of pages of medical records and bills submitted with the demand letter.  On August, 31, 2012, Chartis had its outside legal counsel communicate to Plaintiff's counsel that Chartis did not value Plaintiff's claim as being an undersinsured claim, *i.e.*, having a value in excess of tortfeasor Branum's liability limits.[1]  Therefore, the UIM coverage was not implicated.

Plaintiff mediated the underlying tort action against Branum, but the case did not settle.  Branum demanded that his liability carrier, Safeco, settle the case within his policy limits.  Safeco gave in to this demand.  On February 26, 2013, Plaintiff's counsel wrote to

---

[1] After retaining counsel, Chartis became aware of Branum's liability limits of $500,000.00.

Chartis, advising it of Safeco's decision to tender its limits.[2]  Plaintiff filed her Complaint against Chartis the very same day alleging that it failed to fairly investigate and evaluate her claim.  The parties have been engaged in active litigation ever since.

Since being retained, outside counsel has provided Chartis with legal advice on a number of issues relative to litigation strategy and discovery issues, and the state of law on bad faith in Oklahoma.  Outside legal counsel also provided Chartis with impressions and conclusions on the underlying tort action against Branum.  Plaintiff seeks to discover these privileged materials.  Plaintiff also seeks to discover the entire litigation claim file – even those materials created during and because of this litigation.  Plaintiff would have this Court force Chartis to provide a running production of all letters, emails and reports from its defense counsel.  This is plainly improper.

## II.    CHARTIS HAS PRODUCED ALL DISCOVERABLE MATERIALS IN THE CLAIM FILE.

Chartis has already produced the relevant and non-privileged portions of the claim file.  Now, Plaintiff seeks the remainder of the claims file materials, which consists of non-relevant information, confidential attorney-client communications and materials that were created in anticipation of, and during, this litigation.   Oklahoma has long protected attorney-client communications and a party's work product from disclosure.  The mere fact that Chartis is an insurer investigating and evaluating a UIM claim does not mean that Chartis is not afforded the right to seek confidential legal advice and services from outside counsel from the state where the UIM claim is pending.  Plaintiff already possesses the non-privileged information regarding Chartis's investigation and evaluation of her claim.

---

[2] At that point, Chartis had 60 days to consider issuing substitute payment for Branum's liability limits and subrogating against same, or allowing the 60 day period to expire thus waiving its subrogation rights as a matter of law.  36 O.S. § 3636(F)(2).

Plaintiff is not entitled to see communications between Chartis seeking or obtaining legal services from outside counsel about her claim or pending litigation. Likewise, Plaintiff is not entitled to documents that were created in anticipation, or because, of this litigation.

### a.  The post-denial claim file materials are not relevant to this action.

Plaintiff seeks to discover the Chartis claim file materials *to the present date*. Under the circumstances of this case, most of those materials are not relevant to the issues in this action. In a bad faith action, the "'decisive question is whether the insurer had a good faith belief, *at the time its performance was requested, that it had justifiable reason for withholding payment under the policy*. The insurer's 'knowledge and belief during the time period the claim is being reviewed is the focus of a bad faith claim.'" *Vintage Plastics, LLC v. Mass. Bay Ins. Co.*, 2012 U.S. Dist. LEXIS 47396, *13 (N.D. Okla. Apr. 4, 2012) (emphasis original) (quoting *Sims v. Great Am. Ins. Co.*, 469 F.3d 870, 891 (10th Cir. 2006). "The focal point of the analysis is the point at which the insurer denies the claim." *Wolf v. Prudential Ins. Co. of Am.*, 50 F.3d 793, 798 (10th Cir. 1995). In short, "the cutoff for relevant evidence is the date of payment or denial of the claim." *Hale v. A.G. Ins. Co.*, 2006 OK CIV APP 80, 138 P.3d 567, 571-72 (emphasis added).

Here, Plaintiff demanded tender of the UIM policy limits within 30 days. Chartis responded on August 31, 2012 that it did not value her claim as being an undersinsured claim, *i.e.*, having a value in excess of tortfeasor Branum's $500,000.00 liability limits. At that point, the claim decision was made. Any claim file materials created after that decision are irrelevant to the issues in this case. *See Butterfly-Biles v. State Farm Life Ins. Co.*, 2010 U.S. Dist. LEXIS 4701, *8 (N.D. Okla. Jan. 21, 2010) ("Normally, the key to such a claim would be [the insurer's] conduct up to and including the time it made a decision to deny

Plaintiff the proceeds under the policy. In such a case, [the insurer's] conduct after that decision and after a lawsuit has been filed is irrelevant.").  Accordingly, Chartis's post-denial claim file materials should not be subject to discovery.

Moreover, _post_-litigation claim file materials are necessarily beyond the scope of permissible discovery in a bad faith action where the dispute is centered on the insurer's _pre_-litigation investigation, evaluation and denial of the claim.  The Oklahoma Court of Civil Appeals just noted that "'once a court proceeding is commenced seeking insurance benefits, normal claim handling is superseded by the litigation proceeding.'"  _Andres v. Okla. Farm Bureau Mut. Ins. Co._, 2012 OK CIV APP 93, 290 P.3d 15, 17 (emphasis added) (quoting Allan D. Windt, 2 INSURANCE CLAIMS AND DISPUTES 5TH: REPRESENTATION OF INSURANCE COMPANIES & INSUREDS, § 9:28).  In _Andres_, the Court held that a bad faith claim may not rest on an insurer's post-litigation conduct relative to evaluation and investigation.  _Andres_ is now precedent.  _See Andres v. Okla. Farm Bureau Mut. Ins. Co._, 2012 Okla. LEXIS 89, *1 (Okla. Sept. 17, 2012) ("The opinion of the Court of Civil Appeals, Division IV, by Thornbrugh, Judge, rendered on June 12, 2012, pursuant to 20 O.S. 2011, § 30.5, is approved for publication in the official reporter and therefore accorded precedential value.").  Since an insurer cannot be liable for its investigation-related conduct during litigation, the commencement of litigation should be the ultimate cut off for claim file discovery in all instances.  Anything less would result in never-ending document production and discovery disputes.  Rule 26's relevancy requirement must be "construed and administered to secure the just, speedy, and inexpensive determination of every action . . .."  FED. R. CIV. P. 1. Allowing _ongoing_ discovery of an insurer's litigation claim file would violate the spirit of the Federal Rules of Civil Procedure.

Here, Plaintiff seeks all claim file materials, even those currently being complied during and because of this litigation.   Plaintiff believes she is entitled to all of defense counsel's reports and strategic advice relative to Plaintiff's claims alleged in this action. But, controlling authority now instructs that once litigation commences, the insurer's handling and evaluation of the claim is superseded by the litigation process.   Once the complaint is filed, the die is cast and normal claims handling and evaluation is replaced with adversarial litigation defense.   The Court should deny Plaintiff's motion to compel production of Chartis's post-denial and post-litigation claim file materials.

Further, Chartis was on notice of the underlying tort action against tortfeasor Branum.   Under *Keel v. MFA Ins. Co.*, 553 P.2d 153, 158-159 (Okla. 1976), Chartis had the option to intervene into that suit and engage in formal sanctioned discovery and otherwise fully participate in litigation.   Had Chartis intervened, it would have been protected by the *Andres* rule against bad faith liability for post-litigation investigation and evaluation conduct.   Chartis abstained from that litigation knowing that it would be bound by the tort action judgment as to all issues of liability and damages.   *Keel*, 553 P.2d at 159. Nonetheless, Chartis retained counsel to monitor and report on the underlying litigation, and to begin preparing for what would ultimately become its own litigation involving Plaintiff.   Based upon *Keel* and *Andres*, Chartis's claim file materials, created after it received notice of the tort action, should not be subject to discovery.

### b. Chartis retained legal counsel because it anticipated litigation with Plaintiff, and most of the materials in the claim file were created or obtained because of this litigation.

Much of the claim file is protected from discovery as it was created because of the anticipated, and now pending, litigation with Plaintiff.   In a diversity case, questions of

work product protection are controlled by federal law.   *See Frontier Refining, Inc. v. Gorman-Rupp Co.,* 136 F.3d 695. 702 n.10 (10th Cir. 1998).   Any documents or tangible things, prepared by a party, its attorney or other representative in anticipation of litigation, are protected from discovery.  *See* FED. R. CIV. P. 26(b)(3).  The "work product doctrine" set forth in *Hickman v. Taylor,* 329 U.S. 495 (1947), likewise protects the intangible equivalent of such documents.  *See Oklahoma v. Tyson Foods, Inc.*, 262 F.R.D. 617, 637 n. 8 (N.D. Okla. 2009).

"[W]hether a document is protected as work product depends on the motivation behind its preparation, rather than who prepared it." *Laney v. Schneider Nat'l Carriers, Inc.,* 259 F.R.D. 562, 565-6 (N.D. Okla. 2009) (citing Edna Selan Epstein, THE ATTORNEY CLIENT PRIVILEGE AND THE WORK-PRODUCT DOCTRINE, vol. II, p. 916 (ABA 5th ed.)).  All that is required is that "there was a reasonable threat of litigation and that the motivation for creating the document(s) in question was that threat."  *Id.* at 566 (citing Epstein, at 825).   In other words, for the protection to apply, the "primary motivating purpose" for creation of a document "must be to aid in possible future litigation." *Janicker v. George Washington University*, 94 F.R.D. 648, 650 (D.D.C. 1982).  Conversely, if a document would have been created regardless of the perceived threat of future litigation, then the protection does not apply. *Laney*, 259 F.R.D. at 566.

Here, Chartis understood that litigation with Plaintiff was inevitable.  Plaintiff filed a tort action against tortfeasor Branum on May 29, 2012 in Tulsa County District Court.  On July 20, 2013, Chartis received a time-limited demand for payment of UIM benefits from Plaintiff's attorney, Daniel Smolen.  In that demand letter, Plaintiff's attorney cited *Burch v Allstate Ins. Inc.*, 977 P.2d 1057, and put Chartis "on notice" that Plaintiff was demanding

tender of the UIM policy limits within 30 days.  Chartis then retained outside legal counsel to obtain legal advice regarding the status of Oklahoma law relative to the issues raised in that demand letter.  Chartis understood the demand letter to mean that if it did not tender the UIM policy limits within 30 days, then Plaintiff would file suit against Chartis.  Upon receipt of the time-limited demand letter, Chartis anticipated future litigation and began to rely on its defense counsel to prepare for same.  *See Winton v. Bd. of Comm'rs*, 188 F.R.D. 398, 401 (N.D. Okla. 1999) (work product protection applies to documents created in response to "a potential claim following an actual event or series of events that reasonably could result in litigation.").

Chartis evaluated Plaintiff's claim and its defense counsel communicated to Plaintiff's counsel that Chartis did not value her claim as exceeding tortfeasor Branum's liability limits of $500,000.00.  At that point, Chartis was aware that it had not met Plaintiff's time-limited demand for policy limits and that she would file suit.  All of the claim file entries after this point were created in anticipation of litigation and are therefore protected from discovery.

In the event this Court determines that Chartis is not entitled to a presumed work product privilege as to its post-denial claim file materials, Chartis is providing a privilege log, as required by LCvR 26.4, that will show that most of the documents are protected work product and privileged attorney-client communications.[3]  See Exhibit 1.

---

[3] Chartis is not, however, providing a privilege log for post-litigation attorney-client communications and work product.  *See* LCvR 26.4(b).  To create and maintain and ongoing privilege log for all post-litigation work product and attorney-client communications would be extremely burdensome and against the spirit of the Federal Rules of Civil Procedure, which must be "construed and administered to secure the just, speedy, and inexpensive determination of every action . . .." FED. R. CIV. P. 1.

Many of the claim file documents contain the opinions, conclusions and mental impressions of Chartis's defense counsel.  This "opinion work-product" is not subject to disclosure "simply on a showing of substantial need and inability to obtain the equivalent without undue hardship." *Upjohn Co. v. United States*, 449 U.S. 383, 401-02 (1981). Instead, it is entitled to "heightened or special protection." *Lindley v. Life Investors Ins. Co. of Am.*, 267 F.R.D. 382, 393-394 (N.D. Okla. 2010) (citing *Hoffman v. United Telecommunications, Inc.*, 117 F.R.D. 436, 439 (D.Kan.1987) ("This doctrine provide[s] an almost absolute protection for an attorney's mental impressions and conclusions.").

Here, the claim file, after Chartis retained counsel, contains mostly attorney-client communications and documents created in anticipation of this litigation.  Of course, the claim file contains medical records and bills obtained before and after Chartis retained counsel.  The file likewise contains related fax cover pages, requests for payment and the like from the medical providers.  Those documents have already been produced to Plaintiff. The remainder of the file is mostly legal advice concerning the state of the law in Oklahoma, reports and opinions on the underlying lawsuit, and the like.  The attorneys preparing most of these documents understood that this litigation would be forthcoming.  All of the opinions and advice conveyed was provided in the context of probable litigation with Plaintiff.  Chartis does not retain counsel in the normal course of business to handle or adjust UIM claims in Oklahoma.  Chartis has never done so.  Chartis retained counsel to assist it in understanding and dealing with legal issues that would ultimately become a part of this litigation.

While Plaintiff may be entitled to Chartis's evaluation of Plaintiff's UIM claim, she has made no showing that she is entitled to communications from, or documents created

by, Chartis's legal counsel. The privilege log demonstrates that these documents are indeed privileged as being created in anticipation of litigation. Most of those documents are absolutely protected from discovery as they contain outside legal counsel's opinions, impressions and conclusions. Accordingly, this Court should deny Plaintiff's motion to compel in this regard.

### c. Plaintiff is not entitled to attorney-client communications in the claim file.

Many of the documents in the claim file are also protected by the attorney-client privilege and are therefore shielded from discovery. The attorney-client privilege is one of the oldest privileges recognized in the legal profession. *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981). The purpose is to encourage "full and frank communication between attorneys and their clients and thereby promote broad public interest in the observance of law and the administration of justice." *Id*. at 389.

While work product is a matter of federal law, "issues related to the attorney-client privilege are controlled by state law." *Lindley*, 267 F.R.D. at 388.

> Under OKLA. STAT. tit. 12, § 2502, a client may refuse to disclose any confidential communication made for the purpose of facilitating the rendition of professional legal services. The primary purpose of this privilege is to shield the client's confidential disclosures and the attorney's advice. *Sims v. Travelers Ins. Co.,* 2000 OK CIV APP 145, 16 P.3d 468. The key elements for assertion of this privilege are the existence of an attorney client relationship and the confidential nature of the communication. *Chandler v. Denton,* 1987 OK 38, 741 P.2d 855. The mere fact that an attorney-client relationship exists does make every communication between attorney and client privileged. *Scott v. Peterson,* 2005 OK 84, 126 P.3d 1232, 1234.

*Lindley v. Life Investors Ins. Co. of Am.*, 2010 U.S. Dist. LEXIS 41798, **14-15 (N.D. Okla. Apr. 28, 2010).

"If a person hires a lawyer for advice, there is a rebuttable presumption that the lawyer is hired as such to give legal advice, whether the subject of the advice is criminal or civil, business, tort, domestic relations, or anything else. But the presumption is rebutted when the facts show that the lawyer was employed without reference to his knowledge and discretion in the law." *U.S.. v. Chen*, 99 F.3d 1495, 1501 (9th Cir. 1996) (quotations omitted).  In other words, if the communication concerns legal rights or obligations, or seeks or conveys advice based upon the attorney's knowledge of and experience with the law, the communication is presumed to be privileged. *Id. See also Baklid-Kunz v. Halifax Hosp. Med. Ctr.*, 2012 U.S. Dist. LEXIS 158944, *8 (M.D. Fla. Nov. 6, 2012) ("Communication between corporate client and outside litigation counsel are cloaked with a presumption of privilege."); *Willnerd v. Sybase, Inc.*, 2010 U.S. Dist. LEXIS 135781, *9 (D. Idaho Dec. 22, 2010) ("Communications between a client and its outside counsel are presumed to be made for the purpose of obtaining legal advice."); *Ideal Elec. Co. v. Flowserve Corp.*, 230 F.R.D. 603, 607 (D. Nev. 2005) (same); Paul R. Rice, 1 ATTORNEY-CLIENT PRIVILEGE IN THE UNITES STATES, § 5:14 (2d ed. 1999) ("the unstated operating presumption in situations involving outside retained counsel with limited responsibilities to the client (e.g., strictly legal capacity as opposed to business responsibilities because of a corporate position that he holds), is that the consultations were held for the purpose of obtaining legal advice or assistance.").   Ultimately, the determination turns largely on whether the advice is "business" or "legal" in nature. *Lindley*, 267 F.R.D. at 391.  "Calling the lawyer's advice 'legal' or 'business' advice does not help in reaching a conclusion; it *is* the conclusion." *Chen*, 99 F.3d at 1502 (emphasis original).

Here, Chartis retained outside legal counsel because of the time limited policy limits demand from Plaintiff's attorney. Chartis needed legal advice and assistance regarding the law cited in the demand letter. After conferring with Chartis's outside legal counsel, Mr. Reed anticipated that litigation would ensue if the time limited demand was not met. Once Mr. Reed evaluated Plaintiff's claim as falling within tortfeasor Branum's liability limits, and that was communicated to Plaintiff's counsel, he expected that litigation would be commenced against Chartis. From that point forward, Chartis and its outside legal counsel were preparing for litigation. Most of the communications between Chartis and its legal counsel were related to legal advice and strategy, not just general business advice.

Here, Chartis's outside legal counsel provided numerous communications that contain legal advice concerning the state of Oklahoma law on various topics. For example, the privilege log shows that a letter from outside legal counsel, dated August 16, 2012 [Claim File 445-450], contains advice about the state of the law on subrogation, bad faith and litigation discovery issues. This obviously transmits <u>legal</u> opinions and advice, based upon the author's knowledge of the law. Further, the communication discusses discovery issues related to <u>likely litigation with Plaintiff</u>. This letter is not subject to discovery as it is protected work product and a confidential attorney-client communication. The privilege log also discloses the existence of letters from outside legal counsel regarding Chartis's right to intervene in the underlying lawsuit against tortfeasor Branum [Claim File 428-428, 438-439], as well as Chartis's subrogation rights under the UM statute [Claim File 386-423, 426-428, 429-437]. These letters concerning an insurance company's right to participate in litigation are necessarily created in anticipation of such litigation. The letters are also protected attorney-client communications.

The communications shown on the privilege log contain legal advice from Chartis's outside counsel retained because of its knowledge of Oklahoma law. Even if some of the communications related to advice concerning claims handling, as long as the purpose of the advice is to "bring the[] client[] into compliance with the law," the communications are "therefore within the scope of the attorney-client privilege." *Chen*, 99 F.3d at 1502. Further, even where communications contain a business-related component, as long as the communication pertains to legal advice, it is privileged. *See Lindley v. Life Investors Ins. Co. of Am.*, 2010 U.S. Dist. LEXIS 41798, *17 (N.D. Okla. Apr. 28, 2010) ("Even if there was a business purpose for defendant to seek legal advice, this does not change the fact that the Goldstein Memorandum contains legal advice that defendant treated as a confidential communication between itself and its in-house counsel."). The communications listed on the privilege log are not subject to discovery.

Likewise, many of the claim note entries are privileged. Some of these entries summarize confidential discussions with outside legal counsel regarding aspects of Oklahoma law, including intervention, subrogation, and bad faith [*e.g.*, Claim File 930-931]. Other claim note entries copy and paste the substance of attorney-client communications into the claim notes [*e.g.*, Claim File 926-927]. The attorney-client privilege protects not only communications, but also a corporate-client employee's "memoranda or notes on such communications." *John B. v. Goetz*, 879 F. Supp. 2d 787, 893 (M.D. Tenn. 2010) (citing *Upjohn*, 449 U.S. at 391). Thus, because the underlying communication is protected, Mr. Reed's claim note entries—either summarizing or copying the communications—are likewise protected from discovery.

The attorney-client privilege also constrains the extent and manner in which factual information contained in a privileged communication may be disclosed.   In *Sinclair Oil Corp. v. Texaco, Inc.*, 208 F.R.D. 329 (N.D. Okla. 2002), the Court:

> However, communications between the attorney and the client, even when the parties are discussing factual information, are protected by the attorney client privilege. The factual information discussed by the attorney and the client is discoverable, but the Court will generally not permit a party to inquire into the nature of the communications made between the attorney and the client, and the Court generally does not permit the deposition of the attorney. Instead, the party conducting discovery is permitted to depose witnesses (including the client), and review documents which are available to both the parties and the attorneys but which do not constitute the communications between the client and the attorney.

*Id*. at 332 (citations omitted).

Here, Chartis received reports and opinions from its outside legal counsel concerning the underlying litigation. If Plaintiff wishes to discover facts known to Mr. Reed or Chartis, those facts may be discoverable, but Plaintiff may not discover how those facts were made known if they were transmitted in a confidential attorney-client communication.   Plaintiff contends that her bad faith action "is premised on Chartis' inadequate and unreasonable evaluation of her UIM claim." [Doc. 23 at 6].  Plaintiff does not need to discover confidential communications with legal counsel to inquire into these areas of dispute.  Plaintiff may depose Mr. Reed and review the non-privileged portions of the claim file to discovery the extent and nature of the investigation and evaluation.

For the reasons set forth above, Chartis requests that the Court deny Plaintiff's motion to compel relative to the privileged materials listed on the privilege log and any other post-litigation privileged claim file materials.

14

III.     CHARTIS'S LOSS RESERVES DO NOT SET THE "RANGE OF VALUE" FOR PLAINTIFF'S UIM
         CLAIM THEREFORE SUCH INFORMATION IS NOT RELEVANT OR DISCOVERABLE.

Plaintiff seeks Chartis's loss reserve information in order to discovery the "range of value Defendant established for her claim." *Doc. 23 at 12 and Plaintiff's Document Request No. 8.* But, the loss reserves are not discoverable as they do not provide the information Plaintiff seeks.

The only document—other than possibly claim note entries—that is responsive to Plaintiff's Document Request No. 8 is computer generated report that contains the reserve transaction history for the claim, *including collateral claim expenses.* This means that the document is not restricted to a value range for the claim. Instead, the printout includes reserve settings for expenses for medical records retrieval, outside legal counsel's bills, investigative services and the like. Plaintiff is not entitled to see what Chartis pays its attorneys or third-party vendors for services that might be related to a claim. The report shows a *total* reserve setting, and any changes made, but it does not separate out the expenses. The report is not responsive to Plaintiff's request for documents showing a "range of value" for the claim. Accordingly, the printout should not be discoverable.

A majority of courts recognize that reserves are irrelevant even in cases where the issue of evaluation of value is at issue. The most instructive decision on this point is *Exchange National Bank of Chicago v. United States Fidelity & Guaranty Co.*, 1985 WL 1773 (N.D. Ill. June 6, 1985), where the court denied the plaintiff's motion to compel reserve information despite the plaintiffs' assertion that such information was discoverable as it was relevant to allegations of bad faith and unfair claims practices, stating:

> Contrary to plaintiffs' suggestion, the establishment of a reserve by an insurance company is not a concession that the company acted in bad faith in denying a claim. Nor does it constitute evidence that the company has

15

engaged in unfair claims practices. The establishment of reserves by insurance companies may be nothing more than good business or good accounting practice, or compliance with regulatory requirements. ***The establishment of a reserve has no bearing upon an insurer's liability in a bad faith action or an action for unfair claims practices.***

*Id.* at *1 (emphasis added); *see also Couch v. Equity Gen. Ins. Co.*, 80 B.R. 512 (S.D. Cal. 1987) (reversing order of bankruptcy court permitting discovery of reserves in bad faith action reasoning that "a reserve cannot accurately or fairly be equated with an admission of liability or the value of any particular claim," and that "[t]he contingent and uncertain nature of reserves might make questions regarding them tantamount to hypothetical questions.") This core principle was observed by the Tenth Circuit in *Signature Development Company v. Royal Insurance Company of America*, when it noted that the insurer's "reserve calculation is merely an amount it set aside to cover potential future liabilities." 230 F.3d 1215, 1223-4 (10th Cir. 2000) (citations omitted). "[R]eserves established by an insurance company . . . <u>do not represent the insurer's judgment as to what a plaintiff should recover</u>." *LeBlanc v. Travelers Home & Marine Ins. Co.*, 2011 U.S. Dist. LEXIS 75853, *14 (W.D. Okla. July 13, 2011) (emphasis added).

The nature of reserves as set forth by courts across the county make clear that reserve information is simply not relevant on the issue of an insurer's subjective belief as to the value of a claim. *See, e.g., Rhone-Poulenc Rorer, Inc. v. Home Indem. Co.*, 139 F.R.D. 609, 613-14 (E.D. Pa. 1991) (motion to compel reserve information denied with court recognizing that "[s]uch estimates of potential liability do not normally entail an evaluation of coverage based upon a thorough factual and legal consideration when routinely made as a claim analysis."); *Indep. Petrochemical Corp. v. Aetna Cas. & Sur. Co.*, 117 F.R.D. 283, 288 (D. D.C. 1986) (the establishment of a reserve "do[es] not normally entail an evaluation of

16

coverage based upon a thorough factual and legal consideration . . . "); *Leksi, Inc. v. Fed. Ins. Co.*, 129 F.R.D. 99, 114 (D. N.J. 1989) (motion to compel reserve data denied; reserve information found to be irrelevant to the underlying issues, as it was "not determinative of insurer's interpretation of policy language."); *Union Carbide Co. v. Travelers Indem. Corp.*, 61 F.R.D. 411, 413 (W.D. Pa. 1973) ("[T]he contingent and uncertain nature of reserves could render questions about reserves tantamount to hypothetical questions.").

Reserves are based on internal opinions and conclusions reached by claims handlers, often based on the advice of counsel, that are necessarily hypothetical in nature. *See e.g., Leksi,* 129 F.R.D. at 114 ("claims personnel set reserves on a basis that does not entail a thorough factual and legal analysis of a policy."). An insurer's decisions with respect to setting reserves reflect such uncertainties as the outcome of other legal actions, settlement possibilities, the state of applicable law on key coverage issues, and other contingencies. As explained by the court in *Silva v. Basin Western, Inc.*:

> [R]eserves should not be equated with an admission or valuation by the insurer: A common misconception is that an insurer's loss reserves are the same as settlement authority. They are not. The main purpose of a loss reserve is to comply with statutory requirements and to reflect, as accurately, as possible, the insured's *potential* liability. It does not automatically authorize a settlement at that figure. Reserve amounts are only partially within the insurer's control.

47 P.3d 1184, 1189 (Colo. 2002) (emphasis original) (internal citations omitted).

Here, Chartis set reserves to meet its statutory obligations, not to set a "range of value" for Plaintiff's claim. *See* Okla. Stat. tit. 36, § 1509. The Oklahoma Insurance Commissioner has the authority to mandate Chartis to strengthen its loss reserves at any time. *Id*. at § 1509(B). Although the Insurance Code does not set out specific methodology for setting reserves, it prohibits insurers from using certain accounting methods, such as

present value discounting.  *Id.* at §§ 1509(B) & (C).   Thus, reserves exist to demonstrate an

insurer's *financial adequacy*, not as individual bookmarks of case value.  Loss reserves may

be increased or decreased during a claim or subject to mandatory changes as determined

by  review  from  the  Insurance  Commissioner.    These  regulatory  requirements  and

contingencies  all  affect  the  amount  of  an  insurance  company's  reserves,  which  do  not

represent the "range of value" as claimed by Plaintiff.  *See Silva*, 47 P.3d at 1189.

> As succinctly stated by one federal district court:
>
> It is the Magistrate Judge's understanding that loss reserves by an insurance
> company are largely based on regulatory criteria and do not represent the
> company's own evaluation of liability. That is to say, an insurer who has the
> potential to pay a liability may be required to reserve a substantial amount
> for  that  liability,  even  though  the  company  concludes  that  there  is  a
> significant chance that the liability will not be incurred. The Magistrate Judge
> concludes that reserve information is not relevant to this claim and sustains
> the objection to information concerning reserves.

*Nat'l Union Fire Ins. Co. v. Mead Johnson & Co.*, 2011 U.S. Dist. LEXIS 122149, **9-10 (S.D.

Ind. Oct. 21, 2011) (denying motion to compel).  This reasoning applies squarely to this bad

faith action where Plaintiff asserts that the requested reserve information is probative of

Chartis's "range of value" of the claim.  As the caselaw makes clear, the setting of reserves

does not reflect an analysis by an insurer of the reasonable value of a claim.  Rather it is a

statement of potential liability made within the context of ensuring the company's financial

soundness  under  the  State's  regulatory  scheme.    Such  information  is  not  relevant  to

determine whether the insurer's valuation of Plaintiff's claim was ultimately reasonable.

The better reasoned weight of authority supports the conclusion that whether, and in what

amount, an insurer sets a reserve for a particular claim has no relation to an insurer's

subjective belief concerning the value of a claim or its reasonableness in handling claims.

As recently observed by Judge Payne in the context of the UM bad faith action, "reserve

18

figures in dispute do not represent [the insurer's] judgment as to the value of Plaintiff's claim. As such, the Court specifically finds that evidence regarding the reserve amounts lack relevance to these proceedings . . .." *Higgins v. State Auto Prop. & Cas. Ins. Co.*, 2012 U.S. Dist. LEXIS 91793, **11-12 (N.D. Okla. July 2, 2012).   Since the requested loss reserve information is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence, Plaintiff's motion should be denied to the extent it seeks to compel production of documents showing loss reserve settings.

Further, <u>post-litigation</u> reserve information is necessarily beyond the scope of permissible discovery in a bad faith action where the dispute is centered on the insurer's pre-litigation evaluation of the claim. *See Andres*, 2012 OK CIV APP 93, 290 P.3d 15.  Any changes to the reserves after the August 30, 2012 letter would be irrelevant. *See Vintage Plastics, LLC*, 2012 U.S. Dist. LEXIS 47396, *13.  Here, Plaintiff seeks both pre- and post-litigation reserve information.  Any reserve changes during litigation would invariably be guided by litigation considerations, including defense costs and litigation expense.  Post-litigation reserve information becomes part and parcel of work product to defend the case and would be protected from discovery.   The Court should deny Plaintiff's motion to compel Chartis's loss reserve information.

## IV.    PLAINTIFF IS NOT ENTITLED TO DISCOVER PERSONNEL FILES.

Plaintiff is not entitled to personnel files.  She seeks to discover these private and sensitive documents relative to Brittan Reed (the Casualty Claims Analyst who handled Plaintiff's claim), and Jeff Carroll and Brian Applebee (who discussed the evaluation with Mr. Reed). *See Doc. 23 at 14 and Plaintiff's Document Request No. 11.*  But, Plaintiff does not

explain why these documents are relevant to her claims or how the request would lead to the discovery of admissible evidence in this bad faith action.

District courts are "not required to permit plaintiff to engage in a 'fishing expedition' in the hope of supporting [her] claim." *Munoz v. St. Mary-Corwin Hosp.*, 221 F.3d 1160, 1169 (10th Cir. 2000). "The requirement of Rule 26(b)(1) that the material sought in discovery be 'relevant' should be firmly applied, and the district courts should not neglect their power to restrict discovery to protect 'a party or person from annoyance, embarrassment, or oppression...." *Regan-Touhy v. Walgreen Co.*, 526 F.3d 641, 649 (10th Cir. 2008). Further, "[p]ersonnel files are in general entitled to heightened protection." *Weems v. Corr. Corp. of Am.*, 2010 U.S. Dist. LEXIS 65875, *3 (E.D. Okla. June 30, 2010) (citing *id.* at 648). "[T]he request for personnel information implicates the strong public policy against disclosure of such materials." *Santer v. Teachers Ins. & Annuity Ass'n*, 2008 U.S. Dist. LEXIS 21767, *18 (E.D. Pa. Mar. 18, 2008) (citing *Adams v. Allstate Ins. Co.*, 189 F.R.D. 331, 333 (E.D. Pa. 1999) (finding requests for personnel files of employees who worked on plaintiff's claim "overbroad, and seek[ing] information that is unnecessarily invasive"); *Stabilus v. Haynesworth, Baldwin, Johnson and Greaves*, 144 F.R.D. 258, 266 (E.D. Pa. 1992) ("Defendant may not conduct general discovery into areas unrelated to its claims such as employee performance evaluations.")). "Federal courts recognize that personnel files contain private information and that they should exercise caution in permitting the discovery of information which may embarrass non-party employees." *Moss v. GEICO Indem. Co.*, 2012 U.S. Dist. LEXIS 27611, *13 (M.D. Fla. Mar. 2, 2012).

Plaintiff has provided no rational basis for the production of the personnel files of Messrs. Carroll and Applebee. Neither of these employees handled Plaintiff's claim. Mr.

Carroll discussed Mr. Reed's evaluation of Plaintiff's claim but did not perform and evaluation himself. He did not handle the claim in any way. Mr. Applebee only participated in a discussion as to whether an offer would be made based upon Mr. Reed's evaluation. He had no further connection to the claim handling. Neither of these employees investigated Plaintiff's claim nor did they have any communication with Plaintiff or her attorneys. This Court should protect them from Plaintiff's attempt to fish around in their sensitive files and invade their privacy rights.

With respect to Mr. Reed, whose claim handling is the target of Plaintiff's litigation spear, full scale production of his personnel file would be an unwarranted invasion of his privacy rights. If Plaintiff truly seeks documents that may show that Mr. Reed had been disciplined for mishandling UM/UIM claims, Chartis could simply provide those documents if any exist. Same goes for documents that may show any training he received relative to handling UM/UIM claims. Beyond that, the remainder of his personnel file information would be wholly irrelevant to the issues in this case. Plaintiff's attorneys should not be allowed to rummage through his sensitive documents with the hope that they might find something they think might be useful.

If this Court is inclined to order production of Mr. Reed's personnel file, it should only allow discovery of materials that bear on his qualifications, training and performance with respect to handling UM/UIM claims. *See Porter v. Farmers Ins. Co.*, 2011 U.S. Dist. LEXIS 51336, **1-2 (N.D. Okla. May 10, 2011). Further, if this Court deems production is warranted, it should enter an order that any relevant documents "be produced with redactions for dates of birth, social security numbers, home addresses, home phones, bank account numbers and information, child support, judgment or bankruptcy, or garnishments

21

. . . [as well as] [m]edical information, workers compensation claims, disability claims, health insurance forms, and medical reimbursements or treatment information." *Christensen v. Am. Family Mut. Ins. Co.*, 2011 U.S. Dist. LEXIS 96620, **20-21 (D. Utah Aug. 29, 2011).

V.    **PLAINTIFF'S MOTION IS MOOT WITH REGARD TO TRAINING AND CLAIMS HANDLING GUIDELINES.**

Plaintiff moves the Court to compel Chartis to answer Interrogatory Nos. 8 & 9, and produce documents responsive to Requests Nos. 3 & 9.  Chartis already provided an answer to the interrogatories inquiring into the training of the representative who handled Plaintiff's claim.  The only documents potentially responsive to Requests Nos. 3 & 9 were produced under the stipulated protective order, which was entered since Plaintiff filed her motion to compel.  Accordingly, Plaintiff's motion should be denied as moot in this regard.

WHEREFORE, premises considered, Chartis respectfully requests this Court deny Plaintiff's motion to compel for the reasons set forth above.

## CERTIFICATE OF SERVICE

I hereby certify that on the 6th day of December, 2013, I electronically transmitted the foregoing document to the Clerk of the Court using ECF System for filing and transmittal of a Notice of Electronic Filing to the following ECF registrants:

Donald E. Smolen, II
701 South Cincinnati Avenue
Tulsa, Oklahoma 74119
Attorneys for Plaintiff

/s/ Randall E. Long