IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

(1) NANCY MORRISON

        Plaintiff,

v.

(1) CHARTIS PROPERTY CASUALTY CO., a foreign
    corporation,

        Defendant.

Case No. 13-CV-116-JED-PJC

## OBJECTION AND MOTION TO MODIFY MAGISTRATE JUDGE'S ORDER

Respectfully submitted,

By    /s/ Randall E. Long
        DAN S. FOLLUO, OBA# 11303
        dfolluo@rhodesokla.com
        RANDALL E. LONG, OBA #22216
        rlong@rhodesokla.com
        RHODES, HIERONYMUS, JONES,
        TUCKER & GABLE
        P.O. Box 21100
        Tulsa, Oklahoma 74121-1100
        (918) 582-1173
        (918) 592-3390 Facsimile

# TABLE OF CONTENTS

I.    Factual Background..................................................................................................1

II.   Standard of Review..............................................................................................3

III.  Chartis has Produced the Relevant and Non-Privileged
      Claim File Documents .........................................................................................4

      a.  Post-litigation investigation and evaluataion conduct
          cannot be used to support a bad faith claim under
          Oklahoma law.................................................................................................5

      b.  Chartis denied Plaintiff's claim on August 31, 2012,
          thus, subsequent claim file materials are not discoverable ...........................11

      c.  Chartis retained legal counsel because it anticipated
          litigation with Plaintiff, and most of the materials in the
          claim file were created or obtained because of this litigation......................13

      d.  Plaintiff is not entitled to attorney-client communications
          in the claim file..............................................................................................17

# TABLE OF AUTHORITIES

**Cases:**

*Andres v. Okla. Farm Bureau Mut. Ins. Co. (Andres I),*
   2009 OK CIV APP 97, 227 P.3d 1102 ...................................................................5

*Andres v. Okla. Farm Bureau Mut. Ins. Co. (Andres II),*
   2012 OK CIV APP 93, 290 P.3d 15 ...............................................5, 6, 9, 10, 11

*Baklid-Kunz v. Halifax Hosp. Med. Ctr.,*
   2012 U.S. Dist. LEXIS 158944 (M.D. Fla. Nov. 6, 2012) ...................................18

*Butterfly-Biles v. State Farm Life Ins. Co.,*
   2010 U.S. Dist. LEXIS 4701 (N.D. Okla. Jan. 21, 2010) ....................................12

*Chandler v. Denton,* 1987 OK 38, 741 P.2d 855 ...................................................17

*Christian v. American Home Assur. Co.,* 1977 OK 141, 577 P.2d 899 ...................7

*Frontier Refining, Inc. v. Gorman-Rupp Co.,* 136 F.3d 695 (10th Cir. 1998)..........13

*Hale v. A.G. Ins. Co.,* 2006 OK CIV APP 80, 138 P.3d 567 ...................................12

*Hickman v. Taylor,* 329 U.S. 495 (1947) ...............................................................14

*Higgins v. State Auto Property & Cas. Ins. Co.,*
   2012 U.S. Dist. LEXIS 91793, 2(N.D. Okla. July 2, 2012) ............................. 9, 10

*Hoffman v. United Telecommunications, Inc.,* 117 F.R.D. 436 (D.Kan.1987) ..............16

*Ideal Elec. Co. v. Flowserve Corp.,* 230 F.R.D. 603 (D. Nev. 2005) ......................18

*Janicker v. George Washington University,* 94 F.R.D. 648 (D.D.C. 1982) ...............14

*John B. v. Goetz,* 879 F. Supp. 2d 787 (M.D. Tenn. 2010)......................................21

*Keel v. MFA Ins. Co.,* 553 P.2d 153 (Okla. 1976)...................................................11

*Laney v. Schneider Nat'l Carriers, Inc.,* 259 F.R.D. 562 (N.D. Okla. 2009) ..............14

*Lindley v. Life Investors Ins. Co. of Am.,*
   2010 U.S. Dist. LEXIS 41798 (N.D. Okla. Apr. 28, 2010) ....................16, 17, 18, 19, 20

*Newport v USAA,* 2000 OK 59, ¶ 16, 11 P.3d 190....................................................6

*Oklahoma v. Tyson Foods, Inc.*, 262 F.R.D. 617 (N.D. Okla. 2009) ...................................................... 14

*Roesler v. TIG Ins. Co.*, 251 Fed. Appx. 489 (10th Cir. 2007) ............................................................. 7

*Scott v. Peterson*, 2005 OK 84, 126 P.3d 1232 ................................................................................ 17

*SEC v. Cobalt Multifamily Investors I, Inc.*, 542 F. Supp. 2d 277 (S.D.N.Y. 2008) ........................... 4

*Sims v. Great Am. Ins. Co.*, 469 F.3d 870 (10th Cir. 2006) .......................................................... 12, 17

*Sims v. Travelers Ins. Co.*, 2000 OK CIV APP 145, 16 P.3d 468 ....................................................... 7

*Sinclair Oil Corp. v. Texaco, Inc.*, 208 F.R.D. 329 (N.D. Okla. 2002) ............................................. 21

*Somerlott v. Cherokee Nation Distributors, Inc.*, 686 F.3d 1144 (10th Cir. 2012) ........................... 4

*Timberlake Const. Co. v. U.S. Fid. and Guar. Co.*, 71 F.3d 335 (10th Cir. 1995) ............................. 7

*U.S.. v. Chen*, 99 F.3d 1495 (9th Cir. 1996) ........................................................................ 18, 19, 20

*Upjohn Co. v. United States*, 449 U.S. 383 (1981) .................................................................. 16, 17, 20

*Vintage Plastics, LLC v. Mass. Bay Ins. Co.*,
 2012 U.S. Dist. LEXIS 47396 (N.D. Okla. Apr. 4, 2012) ............................................................ 12

*Willnerd v. Sybase, Inc.*, 2010 U.S. Dist. LEXIS 135781 (D. Idaho Dec. 22, 2010) ........................ 18

*Winton v. Bd. of Comm'rs*, 188 F.R.D. 398 (N.D. Okla. 1999) ......................................................... 15

*Wolf v. Prudential Ins. Co. of Am.*, 50 F.3d 793 (10th Cir. 1995) .................................................... 12

**Statutes:**

LCvR 26.4(b) .................................................................................................................................. 16

12 O.S. § 2502 ............................................................................................................................... 18

36 O.S. § 3636(F)(2) ........................................................................................................................ 2

28 U.S.C. § 636(b)(1)(A) ................................................................................................................... 3

Fed. R. Civ. P. 1 ......................................................................................................................... 11, 15

Fed. R. Civ. P. 26(b)(3) ................................................................................................................... 13

Fed.R.Civ.P. 72(a) ............................................................................................................................ 3

**Other Sources:**

Allan D. Windt, 2 Insurance Claims and Disputes 5th:
  Representation of Insurance Companies & Insureds, § 9:28................................................6

Edna Selan Epstein, THE ATTORNEY CLIENT PRIVILEGE AND THE
  WORK-PRODUCT DOCTRINE, vol. II, p. 916 (ABA 5th ed.)......................................14

Paul R. Rice, 1 ATTORNEY-CLIENT PRIVILEGE IN THE UNITES STATES, § 5:14 (2d ed. 1999)..............19

Zampino and Coleman, *"Turning the Other Cheek: Can Insurers'*
  *Defense of Coverage Suits Constitute Grounds for Bad Faith Litigation?"*
  38 Tort Trial & Ins. Prac. L.J. 103, 105 (Fall 2002) ............................................................7

Defendant Chartis Property Casualty Co. ("Chartis") submits its objection to the Magistrate Judge's Order [Doc. 49] on Plaintiff's Motion to Compel, and requests that it be modified in part as set forth below:

## I.  FACTUAL BACKGROUND

Chartis provided Plaintiff with UIM coverage with limits of $500,000.00. On August 18, 2011, she was involved in a motor vehicle accident with tortfeasor, John Branum. Plaintiff underwent medical treatment for some injuries including a rotator cuff repair. Six months after the accident, Plaintiff had both of her breast implants replaced and claims it was necessary because of the accident. She underwent some physical therapy for neck stiffness and pain, but has not undergone surgery and has no plans to do so. Plaintiff's medical bills approximate $50,000.00. She does not work so she did not seek any damages for lost wages or loss of earning capacity. Tortfeasor Branum's liability limits are $500,000.00.

On August 31, 2011, Plaintiff's counsel notified Chartis that she was pursuing a med-pay and UIM claim. Plaintiff's UIM claim was assigned to Brittan Reed, a Casualty Claims Specialist, for handling. Mr. Reed immediately began investigating the claim relative to liability and damages. He reviewed the police report and photographs of vehicle damage, and discussed the claim with the Safeco adjuster. Mr. Reed also contacted Plaintiff's counsel many times over the next several months in order to obtain an update on the status of Plaintiff's medical treatment and condition. In April 2012, Mr. Reed requested a statement from Plaintiff in order to assist in his investigation and evaluation of the injury claim. Mr. Reed received the summary of that statement on May 11, 2012. Safeco refused

to disclose its policy limits at that time so Mr. Reed was unable to determine whether the claim qualified for UIM coverage.

On May 29, 2012, Plaintiff sued tortfeasor Branum in state court to recover damages from him. On July 20, 2012, Chartis received a time-limited demand for payment of UIM benefits from Plaintiff's attorney, Daniel Smolen. In that demand letter, Plaintiff's attorney cited *Burch v Allstate Ins. Inc.*, 977 P.2d 1057, and put Chartis "on notice" that Plaintiff was demanding tender of the UIM policy limits within 30 days. After receiving this message, Chartis retained counsel to obtain legal advice regarding the status of Oklahoma law relative to the issues raised in that demand letter. Chartis understood the demand letter to mean that if it did not tender the UIM limits within 30 days, then Plaintiff would file suit.

Chartis promptly evaluated Plaintiff's claim based upon the hundreds of pages of medical records and bills submitted with the demand letter. On August, 31, 2012, Chartis had its counsel communicate to Plaintiff's counsel that Chartis did not value Plaintiff's claim as being an underinsured claim, *i.e.*, having a value in excess of tortfeasor Branum's liability limits.[1] Therefore, the UIM coverage was not implicated.

Plaintiff mediated the underlying tort action against Branum, but the case did not settle. Branum demanded that his liability carrier, Safeco, settle the case within his policy limits or else it be sued for bad faith failure to settle. Safeco gave in to this demand. On February 26, 2013, Plaintiff's counsel wrote to Chartis, advising it of Safeco's decision to tender its limits.[2] Plaintiff filed her Complaint against Chartis the very same day alleging

---

[1] After retaining counsel, Chartis became aware of Branum's liability limits of $500,000.00.
[2] At that point, Chartis had 60 days to consider issuing substitute payment for Branum's liability limits and subrogating against same, or allowing the 60 day period to expire thus waiving its subrogation rights as a matter of law. 36 O.S. § 3636(F)(2).

that it failed to fairly investigate and evaluate her claim. The parties have been engaged in active litigation and discovery ever since.

Plaintiff now seeks to discover Chartis's "entire" claim file. But the claim file contains many privileged documents, and other documents that are irrelevant to the damage claims at issue. Outside counsel has provided Chartis with legal advice on a number of issues relative to litigation strategy and discovery issues, and the state of law on bad faith in Oklahoma. Outside legal counsel also provided Chartis with impressions and conclusions on the underlying tort action against Branum. Plaintiff seeks to discover these privileged materials.

Plaintiff also seeks to discover the materials created during and because of this litigation. Since this action commenced, Chartis's investigation has been conducted by its defense counsel within the confines of authorized discovery. These actions are not subject to discovery. Plaintiff would have this Court force Chartis to provide a running production of all letters, emails and reports from its defense counsel. This is plainly improper.

The Magistrate Judge appears to have ordered Chartis to produce all claim file materials, including post-litigation materials, which are "related to the ongoing investigation, evaluation and processing of the claim, as well as payment or non-payment of the claim." *Doc. 49 at 6.* Chartis challenges this ruling as outlined below.

## II.    STANDARD OF REVIEW

The district court reviews a magistrate judge's non-dispositive order under a "clearly erroneous or contrary to law" standard. 28 U.S.C. § 636(b)(1)(A); Fed.R.Civ.P. 72(a). A finding is clearly erroneous when, upon review of the entire record, the district court "is left with the definite and firm conviction that a mistake has been committed."

*Somerlott v. Cherokee Nation Distributors, Inc.,* 686 F.3d 1144, 1148 (10th Cir. 2012) (quotations omitted). "An order is 'contrary to law' when it fails to apply or misapplies relevant statutes, case law or rules of procedure." *SEC v. Cobalt Multifamily Investors I, Inc.,* 542 F. Supp. 2d 277, 279 (S.D.N.Y. 2008) (quotations omitted). To the extent the Magistrate Judge's Order compels production of non-relevant and privileged post-litigation documents and information, it is clearly erroneous and contrary to law.

### III.   CHARTIS HAS PRODUCED THE RELEVANT AND NON-PRIVILEGED CLAIM FILE DOCUMENTS.

Plaintiff has already discovered the relevant and non-privileged portions of the Chartis claim file. The remaining materials include non-relevant information, confidential attorney-client communications and materials protected by the work product privilege. Plaintiff is not entitled to see communications between Chartis seeking or obtaining legal services from outside counsel about her claim or pending litigation. Likewise, Plaintiff is not entitled to documents that were created in anticipation, or because, of this litigation.

Plaintiff chose to file suit against Chartis. During this litigation, Chartis has exercised its right to engage in discovery under the Federal Rules, and relied upon its counsel to investigate plaintiff's claim and conduct an appropriate defense to Plaintiff's allegations. All of the information that Chartis has learned since commencement of this action has been obtained through the authorized discovery process and conveyed through counsel. Those attorney-client communications are privileged. Further, Plaintiff's allegations that Chartis has failed to investigate and evaluate her claim during this litigation cannot form the basis of a bad faith claim under controlling Oklahoma law. This is so because the litigation process supersedes the claim handling process. Discovery of post-litigation investigation/evaluation conduct is thus irrelevant and not reasonably calculated

to lead to the discovery of admissible evidence. To the extent the Magistrate Judge's Order compels discovery of privileged documents and non-relevant post-litigation conduct, it is clearly erroneous and contrary to law.

> **a.** **Post-litigation investigation and evaluation conduct cannot be used to support a bad faith claim under Oklahoma law.**

The Oklahoma Court of Civil Appeals and Oklahoma Supreme Court have recently clarified that a bad faith claim cannot be based upon an insurer's post-litigation conduct relating to investigation and evaluation of an insurance claim. *See Andres v. Okla. Farm Bureau Mut. Ins. Co. (Andres II)*, 2012 OK CIV APP 93, 290 P.3d 15.[3] Accordingly, discovery of such conduct would be improper.

In *Andres v. Okla. Farm Bureau Mut. Ins. Co. (Andres I)* , 2009 OK CIV APP 97, 227 P.3d 1102, the insured made a first party property damage insurance claim against her homeowner's policy. The insurer denied that coverage existed for her claim. The insured sued for breach of contract and bad faith. The trial court granted summary judgment in the insurer's favor, which resulted in the first appeal. The Court of Civil Appeals found that coverage existed for the claim and directed the trial court to enter judgment in favor of the insured. 2009 OK CIV APP 97, ¶19, 227 P.3d 1102, 1107. The *Andres I* court also held that the insurer had a reasonable basis to deny the claim, therefore, the insurer was entitled to summary judgment on the plaintiff's claim that the insurer acted in bad faith in handling her claim prior to litigation. *Id.*

---

[3] *Andres II* is now binding precedent as if the opinion were rendered by the Oklahoma Supreme Court. *See Andres v. Okla. Farm Bureau Mut. Ins. Co.*, 2012 Okla. LEXIS 89, *1 (Okla. Sept. 17, 2012) ("The opinion of the Court of Civil Appeals, Division IV, by Thornbrugh, Judge, rendered on June 12, 2012, pursuant to 20 O.S. 2011, § 30.5, is approved for publication in the official reporter and therefore accorded precedential value.").

After remand, the parties engaged in pretrial discovery as to the plaintiff's damages. This lasted a little over a year. Then, the plaintiff filed a separate action (while the original action was still pending), alleging that the insurer acted in bad faith while the first litigation was pending.[4] The plaintiff alleged that the insurer "did absolutely nothing [after remand] to independently investigate and evaluate Plaintiff's claim so that it could pay her on it," and that the insurer "simply sat back and waited for Plaintiff to prove her claim's value without ever proferring its own evaluation." *Andres II*, 2012 OK CIV APP 93, ¶3, 290 P.3d at 16. It was undisputed that the insurer engaged in authorized pretrial discovery as to Plaintiff's damages, and that it performed no independent investigation outside of the litigation context. *Id.* at ¶6, 290 P.3d at 16. The insurer moved for summary judgment on the failure to investigate and evaluate claim, and the trial court granted the motion. The question on appeal in *Andres II* was whether the plaintiff could base her bad faith claim on "her contention that [the insurer] failed to initiate and pursue an independent investigation to evaluate her claim" during the first litigation after remand. *Id.* at ¶10, 290 P.3d at 17. The *Andres II* court held that she could not.

The court first state the general rule that "an insurance company has a duty to its insured to conduct an investigation of a claim that is 'reasonably appropriate under the circumstances.'" *Id.* (quoting *Newport v USAA,* 2000 OK 59, ¶ 16, 11 P.3d 190, 196-97). In that regard, the *Andres II* court noted:

> What is "reasonably appropriate under the circumstances," in terms of an investigation, of necessity will differ depending on the facts of a particular case. In this regard, it has been noted that "**once a court proceeding is commenced seeking insurance benefits, normal claim handling is superseded by the litigation proceeding**." Allan D. Windt, 2 Insurance Claims and Disputes 5th: Representation of Insurance Companies & Insureds,

---

[4] *See Exhibit 1,* (Petition, Tulsa County Case No. CJ-2011-01124).

§ 9:28. The article continues: "The insurer retains counsel, and the insurer then relies upon its counsel to handle discovery in the context of the litigation proceeding. **Accordingly, properly analyzed, an insurer cannot be guilty of bad faith because it does not conduct its own investigation, but instead relies upon its counsel to conduct an investigation that is appropriate in a litigation context.**"

Not inconsistently with this sentiment, the Court in *Newport* also made clear that its statement of an insurer's duty "is not to say that an insurer may not negotiate or litigate the value of the claim." 2000 OK 59 at ¶ 16, 11 P.3d at 197. Clearly, an insurer's right to engage in litigation in good faith has been recognized since the tort of bad faith was first recognized by the Oklahoma Supreme Court in *Christian v. American Home Assur. Co.*, 1977 OK 141, ¶ 25, 577 P.2d 899, 904-05 ("We do not hold that an insurer who resists and litigates a claim made by its insured does so at its peril that if it loses the suit or suffers a judgment against it for a larger amount than it had offered in payment, it will be held to have breached its duty to act fairly and in good faith and thus be liable in tort.").

*Id.* at ¶¶11-12, 290 P.3d at 17 (emphasis added). The *Andres II* court further noted that "[s]tate and federal appeals courts also have refused to recognize a bad faith claim against an insurer based solely on an insurance company's alleged post-litigation conduct of disputing an insured's damages." *Id.* at ¶13, 290 P.3d at 17 (citing *Sims v. Travelers Ins. Co.*, 2000 OK CIV APP 145, ¶¶ 9-12, 16 P.3d 468, 471-72; *Timberlake Const. Co. v. U.S. Fid. and Guar. Co.*, 71 F.3d 335, 341 (10th Cir. 1995)). This is so because, "after a lawsuit is pending, 'to hold an insurer's acceptable litigation tactics as evidence of bad faith would be to deny the insurer a complete defense.'" *Id.* (citing *Roesler v. TIG Ins. Co.*, 251 Fed. Appx. 489, 498 (10th Cir. 2007)). Finally, the court pointed out that "'courts have uniformly rejected the argument that an insurer can be guilty of bad faith for simply defending itself in a coverage litigation and taking advantage, even zealously so, of every right afforded under applicable state and federal discovery rules.'" *Id.* at ¶14, 290 P.3d at 17-18 (quoting Zampino and Coleman, *"Turning the Other Cheek: Can Insurers' Defense of Coverage Suits Constitute Grounds for Bad Faith Litigation?"* 38 Tort Trial & Ins. Prac. L.J. 103, 105 (Fall 2002)).

The *Andres II* court held that under the above legal principles, the plaintiff could <u>not</u> state a bad faith claim based upon the insurer's failure to initiate and pursue an <u>independent</u> investigation to evaluate her claim during litigation. As the court noted,

> The flaw in Plaintiff's attempt, at this point, to pursue a bad faith claim based on [the insurer's] alleged failure to investigate, is that this matter *is currently in litigation.* It is undisputed that [the insurer] is represented by counsel, and that the conduct on which Plaintiff bases her bad faith claim concerns the manner in which [insurer] has proceeded since remand in *Andres I.*

> In short, Plaintiff's contention that OFB did not properly investigate and evaluate her claim does not apply to the facts of this case.

*Id.* at ¶¶15-16, 290 P.3d at 18 (emphasis original).

It is now clear that a bad faith claim cannot be based upon allegations that the insurer failed to conduct a proper independent investigation and/or evaluation during pending litigation. In a case where the plaintiff's damages are in dispute, the parties have the right to engage in authorized discovery and rely upon their lawyers to make strategic decisions on how to investigate and evaluate the claim within the confines of the litigation. *Andres II* provides that the insurer is <u>not</u> required to perform and independent investigation and evaluation if the parties are engaged in litigation discovery. Thus, a bad faith claim may not rest on the insurer's post-litigation conduct with respect to investigation and evaluation of the claim. *See id.* at ¶¶15-16, 290 P.3d at 18. Otherwise, while the parties engage in discovery through their attorneys, a plaintiff could simply argue that the <u>insurer itself</u> did nothing to investigate and evaluate the claim and, therefore, it acted in bad faith. *Andres II* forecloses this argument as a basis for a bad faith claim.

Since an insurer cannot be liable for its investigation-related conduct <u>during litigation</u>, the commencement of litigation should be the cut off for discovery of such conduct. Rule 26 first requires that information must be "relevant to the claim or defense

of any party" before it is subject to discovery. While relevance is treated broadly in discovery matters, the discovery of <u>post-litigation</u> investigation/evaluation conduct is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence. This is so because *Andres II* forecloses use of such conduct to support a bad faith claim.

Here, like in *Andres II*, the parties disputed the extent of Plaintiff's damages. Here, like in *Andres II*, the parties have utilized the litigation discovery process to investigate and evaluate the extent of those damages. Here, like in *Andres II*, Plaintiff seeks to rely upon the insurer's post-litigation investigation/evaluation conduct to support her bad faith claim. There is no material distinction between *Andres II* and the present case.

Plaintiff seeks all claim file materials, even those currently being complied during and because of this litigation. Plaintiff believes she is entitled to all of defense counsel's reports and strategic advice relative to Plaintiff's claims alleged in this action. But, controlling authority now instructs that once litigation commences, the insurer's handling and evaluation of the claim is superseded by the litigation process. Once the complaint is filed, the die is cast and normal claims handling and evaluation is replaced with adversarial litigation defense.

The Magistrate Judge ruled that "*Andres* simply does not stand for the proposition that the commencement of litigation is the cut-off date for discovery of claim file material in all instances." *Doc. 49 at 5* (citing *Higgins v. State Auto Property & Cas. Ins. Co.,* 2012 U.S. Dist. LEXIS 91793, 2012 WL 2571278, *5 (N.D. Okla. July 2, 2012)) ("Oklahoma courts would likely hold that the duty of good faith and fair dealing extends into litigation until a claim has either been paid or denied."). Relying on *Higgins*, the Magistrate Judge reasoned that there is a distinction between "the post-litigation

continuing investigation of a claim and true litigation conduct." *Doc. 49 at 6* (citing *Higgins*, at **6-7). But the Magistrate Judge's reliance on *Higgins* is misplaced. *Higgins* predated the reporting of *Andres II* and thus, it did not address that decision and its impact on the viability of prior cases that implied a duty to independently investigate and evaluate a claim during pending litigation.[5] *Andres II* teaches that where the insurer relies upon counsel to investigate through authorized discovery, the insurer has no duty to independently investigate the damage claim during litigation. The *Andres II* court held that the plaintiff could not proceed with the bad faith claim based upon the plaintiff's "contention that [the insurer] failed to initiate and pursue an independent investigation to evaluate her claim" <u>during</u> litigation. *Id.* at ¶10, 290 P.3d at 17. Thus, *Andres II* did not focus on "true litigation conduct" as the Magistrate Judge's Order suggests, but instead on the insurer's extrajudicial conduct. And because the parties were engaged in litigation, there was no duty to pursue an independent investigation. *Andres II* is binding on this Court.

A plaintiff may not support a bad faith claim with evidence of an insurer's lack of (or improper) independent investigation and evaluation while the parties are engaged in litigation and authorized discovery. To hold otherwise would allow Plaintiff here to be able to claim that Chartis did absolutely nothing to investigate and evaluate her claim after suit was filed simply because Chartis exercised its right to employ counsel to do so within the context of authorized discovery. The plaintiff in *Andres II* made the exact same argument, and it was rejected by the court.

---

[5] *Andres II* was not reported until mandate was issued on October 11, 2012, well after *Higgins*. *See* http://www.oscn.net/applications/oscn/DeliverDocument.asp?CiteID=468280

Here, Chartis has relied upon its defense counsel to investigate and evaluate the claim <u>within the confines of this pending litigation</u>. *Andres II* not only authorizes this conduct by Chartis, <u>it also insulates such conduct from bad faith liability</u>. Since evidence of post-litigation investigation and evaluation conduct may not be relied upon to support the bad faith claim, it should not be subject to discovery.

Allowing production of post-litigation investigation conduct would result in never-ending document production and discovery disputes. Rule 26's relevancy requirement must be "construed and administered to secure the just, speedy, and inexpensive determination of every action . . .." FED. R. CIV. P. 1. Allowing <u>ongoing</u> discovery of an insurer's litigation claim file would violate the spirit of the Federal Rules of Civil Procedure. The Magistrate Judge's Order is clearly erroneous and contrary to law to the extent that it provides that "discovery of post-litigation conduct related to the ongoing investigation, evaluation and processing of the claim, as well as payment or non-payment of the claim will be allowed." *Doc. 49 at 6.* This Court should vacate that part of the Order and rule that such discovery is not allowed under *Andres II.*

Additionally, Chartis should not have to produce claim file materials after it was on notice of the underlying tort action against tortfeasor Branum. Under *Keel v. MFA Ins. Co.,* 553 P.2d 153, 158-159 (Okla. 1976), Chartis had the option to intervene into that suit and engage in formal sanctioned discovery and otherwise fully participate in litigation. Had Chartis intervened, it would have been protected by the *Andres II* rule against bad faith liability for post-litigation investigation and evaluation conduct. Chartis abstained from that litigation knowing that it would be bound by the tort action judgment as to all issues of liability and damages. *Keel,* 553 P.2d at 159. Nonetheless, Chartis retained counsel to

monitor and report on the underlying litigation, and to begin preparing for what would ultimately become its own litigation involving Plaintiff. Based upon *Keel* and *Andres II*, Chartis's claim file materials, created after it received notice of the tort action, should not be subject to discovery.

### b. Chartis denied Plaintiff's claim on August 31, 2012, thus, subsequent claim file materials are not discoverable.

Under the circumstances of this case, most of the claim file materials are not relevant to the issues in this action. In a bad faith action, the "'decisive question is whether the insurer had a good faith belief, *at the time its performance was requested, that it had justifiable reason for withholding payment under the policy*. The insurer's 'knowledge and belief during the time period the claim is being reviewed is the focus of a bad faith claim.'" *Vintage Plastics, LLC v. Mass. Bay Ins. Co.*, 2012 U.S. Dist. LEXIS 47396, *13 (N.D. Okla. Apr. 4, 2012) (emphasis original) (quoting *Sims v. Great Am. Ins. Co.*, 469 F.3d 870, 891 (10th Cir. 2006). "The focal point of the analysis is the point at which the insurer denies the claim." *Wolf v. Prudential Ins. Co. of Am.*, 50 F.3d 793, 798 (10th Cir. 1995). In short, "the cutoff for relevant evidence is the date of payment or denial of the claim." *Hale v. A.G. Ins. Co.*, 2006 OK CIV APP 80, 138 P.3d 567, 571-72 (emphasis added).

Here, in late July 2012, Plaintiff demanded tender of the UIM policy limits within 30 days. Chartis responded on August 31, 2012 that it did not value her claim as being an undersinsured claim, *i.e.*, having a value in excess of tortfeasor Branum's $500,000.00 liability limits. At that point, the claim decision was made. Any claim file materials created after that decision are irrelevant to the issues in this case. *See Butterfly-Biles v. State Farm Life Ins. Co.*, 2010 U.S. Dist. LEXIS 4701, *8 (N.D. Okla. Jan. 21, 2010) ("Normally, the key to such a claim would be [the insurer's] conduct up to and including the time it made a

decision to deny Plaintiff the proceeds under the policy. In such a case, [the insurer's] conduct after that decision and after a lawsuit has been filed is irrelevant."). Accordingly, Chartis's post-denial claim file materials should not be subject to discovery.

The Magistrate Judge erroneously concluded that Chartis's denial was not a true "denial" under the above authorities. The Magistrate Judge based this conclusion on the fact that the denial letter stated that the claim was denied "at this time" and that Chartis would "be more than happy to review" and evaluate additional documentation to the extent any existed. Had Chartis simply denied the claim outright and closed its file, Plaintiff would have alleged that Chartis acted in bad faith by doing so. There is nothing improper about keeping a file open because of the possibility of additional evidence being discovered. Since the denial letter was issued, Chartis simply had its legal counsel obtain copies of the medical records and bills directly from the providers. This continued until the lawsuit was filed, but there was never a change in the basis for the denial of the claim.

### c. Chartis retained legal counsel because it anticipated litigation with Plaintiff, and most of the materials in the claim file were created or obtained because of this litigation.

Much of the claim file is protected from discovery as it was created because of the anticipated, and now pending, litigation with Plaintiff. As for Chartis's privileged claim file documents, the Magistrate Judge's Order does not address them. The Order states that "the fact that an insurer involves an attorney in investigating a claim is insufficient to make a routine business investigation suddenly privileged." *Doc. 49 at 5 (quotations omitted).* The Order recognizes that some materials and information may in fact be privileged, but seemingly only to the extent that it is based upon "true litigation conduct." *Doc. 49 at 6.* This conclusion is contrary to law. Chartis has provided a privilege log that identifies pre-

suit privileged documents.  Chartis asserts that many of the documents and information are privileged attorney-client communications.  Some are protected work product.  Others are protected by both.  The Magistrate Judge's order does not address these contentions.

In a diversity case, questions of work product protection are controlled by federal law.  *See Frontier Refining, Inc. v. Gorman-Rupp Co.,* 136 F.3d 695. 702 n.10 (10th Cir. 1998).  Any documents or tangible things, prepared by a party, its attorney or other representative in anticipation of litigation, are protected from discovery.  *See* FED. R. CIV. P. 26(b)(3).  The "work product doctrine" set forth in *Hickman v. Taylor,* 329 U.S. 495 (1947), likewise protects the intangible equivalent of such documents.  *See Oklahoma v. Tyson Foods, Inc.,* 262 F.R.D. 617, 637 n. 8 (N.D. Okla. 2009).

"[W]hether a document is protected as work product depends on the motivation behind its preparation, rather than who prepared it."  *Laney v. Schneider Nat'l Carriers, Inc.,* 259 F.R.D. 562, 565-6 (N.D. Okla. 2009) (citing Edna Selan Epstein, THE ATTORNEY CLIENT PRIVILEGE AND THE WORK-PRODUCT DOCTRINE, vol. II, p. 916 (ABA 5th ed.)).  All that is required is that "there was a reasonable threat of litigation and that the motivation for creating the document(s) in question was that threat."  *Id.* at 566 (citing Epstein, at 825).  In other words, for the protection to apply, the "primary motivating purpose" for creation of a document "must be to aid in possible future litigation."  *Janicker v. George Washington University,* 94 F.R.D. 648, 650 (D.D.C. 1982).  Conversely, if a document would have been created regardless of the perceived threat of future litigation, then the protection does not apply.  *Laney,* 259 F.R.D. at 566.

Here, Chartis understood that litigation with Plaintiff was inevitable.  Plaintiff filed a tort action against tortfeasor Branum on May 29, 2012 in Tulsa County District Court.  On

July 20, 2013, Chartis received a time-limited demand for payment of UIM benefits from Plaintiff's attorney, Daniel Smolen. In that demand letter, Plaintiff's attorney cited *Burch v Allstate Ins. Inc.*, 977 P.2d 1057, and put Chartis "on notice" that Plaintiff was demanding tender of the UIM policy limits within 30 days. Chartis then retained outside legal counsel to obtain legal advice regarding the status of Oklahoma law relative to the issues raised in that demand letter. Chartis understood the demand letter to mean that if it did not tender the UIM policy limits within 30 days, then Plaintiff would file suit against Chartis. Upon receipt of the time-limited demand letter, Chartis anticipated future litigation and began to rely on its defense counsel to prepare for same. *See Winton v. Bd. of Comm'rs*, 188 F.R.D. 398, 401 (N.D. Okla. 1999) (work product protection applies to documents created in response to "a potential claim following an actual event or series of events that reasonably could result in litigation.").

Chartis evaluated Plaintiff's claim and its defense counsel communicated to Plaintiff's counsel that Chartis did not value her claim as exceeding tortfeasor Branum's liability limits of $500,000.00. At that point, Chartis was aware that it had not met Plaintiff's time-limited demand for policy limits and that she would file suit. All of the claim file entries after this point were created in anticipation of litigation and are therefore protected from discovery.

In the event this Court determines that Chartis is not entitled to a presumed work product privilege as to its post-denial claim file materials, Chartis is providing a privilege

log, as required by LCvR 26.4, that will show that most of the documents are protected work product and privileged attorney-client communications.[6] *See Exhibit 2.*

Many of the claim file documents contain the opinions, conclusions and mental impressions of Chartis's defense counsel. This "opinion work-product" is not subject to disclosure "simply on a showing of substantial need and inability to obtain the equivalent without undue hardship." *Upjohn Co. v. United States*, 449 U.S. 383, 401-02 (1981). Instead, it is entitled to "heightened or special protection." *Lindley v. Life Investors Ins. Co. of Am.*, 267 F.R.D. 382, 393-394 (N.D. Okla. 2010) (citing *Hoffman v. United Telecommunications, Inc.*, 117 F.R.D. 436, 439 (D.Kan.1987) ("This doctrine provide[s] an almost absolute protection for an attorney's mental impressions and conclusions.").

Here, the claim file, after Chartis retained counsel, contains mostly attorney-client communications and documents created in anticipation of this litigation. Of course, the claim file contains medical records and bills obtained before and after Chartis retained counsel. The file likewise contains related fax cover pages, requests for payment and the like from the medical providers. Those documents have already been produced to Plaintiff. The remainder of the file is mostly legal advice concerning the state of the law in Oklahoma, reports and opinions on the underlying lawsuit, and the like. The attorneys preparing most of these documents understood that this litigation would be forthcoming. All of the opinions and advice conveyed was provided in the context of probable litigation with Plaintiff. Chartis does not retain counsel in the normal course of business to handle or

---

[6] Chartis is not, however, providing a privilege log for post-litigation attorney-client communications and work product. *See* LCvR 26.4(b). To create and maintain and ongoing privilege log for all post-litigation work product and attorney-client communications would be extremely burdensome and against the spirit of the Federal Rules of Civil Procedure, which must be "construed and administered to secure the just, speedy, and inexpensive determination of every action...." FED. R. CIV. P. 1.

adjust UIM claims in Oklahoma. Chartis has never done so. Chartis retained counsel to assist it in understanding and dealing with legal issues that would ultimately become a part of this litigation.

Plaintiff has made no showing that she is entitled to communications from, or documents created by, Chartis's legal counsel. Chartis's privilege log demonstrates that these documents are indeed privileged as being created in anticipation of litigation. Most of those documents are absolutely protected from discovery as they contain outside legal counsel's opinions, impressions and conclusions. In the event the Court is unable to rule upon the applicability of the asserted privilege as to the listed documents, Chartis recommends the Court review the documents *in camera*. The Court should modify the Magistrate Judge's Order to hold that discovery of privileged materials is not allowed.

### d. Plaintiff is not entitled to attorney-client communications in the claim file.

Many of the documents in the claim file are also protected by the attorney-client privilege and are therefore shielded from discovery. The attorney-client privilege is one of the oldest privileges recognized in the legal profession. *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981). The purpose is to encourage "full and frank communication between attorneys and their clients and thereby promote broad public interest in the observance of law and the administration of justice." *Id.* at 389. While work product is a matter of federal law, "issues related to the attorney-client privilege are controlled by state law." *Lindley*, 267 F.R.D. at 388.

Oklahoma has long protected attorney-client communications and a party's work product from disclosure. The mere fact that Chartis is an insurer investigating and evaluating a UIM claim does not mean that Chartis is not afforded the right to seek

confidential legal advice and services from outside counsel from the state where the UIM claim is pending.

> Under OKLA. STAT. tit. 12, § 2502, a client may refuse to disclose any confidential communication made for the purpose of facilitating the rendition of professional legal services. The primary purpose of this privilege is to shield the client's confidential disclosures and the attorney's advice. *Sims v. Travelers Ins. Co.,* 2000 OK CIV APP 145, 16 P.3d 468. The key elements for assertion of this privilege are the existence of an attorney client relationship and the confidential nature of the communication. *Chandler v. Denton,* 1987 OK 38, 741 P.2d 855. The mere fact that an attorney-client relationship exists does make every communication between attorney and client privileged. *Scott v. Peterson,* 2005 OK 84, 126 P.3d 1232, 1234.

*Lindley v. Life Investors Ins. Co. of Am.,* 2010 U.S. Dist. LEXIS 41798, **14-15 (N.D. Okla. Apr. 28, 2010).

"If a person hires a lawyer for advice, there is a rebuttable presumption that the lawyer is hired as such to give legal advice, whether the subject of the advice is criminal or civil, business, tort, domestic relations, or anything else. But the presumption is rebutted when the facts show that the lawyer was employed without reference to his knowledge and discretion in the law." *U.S.. v. Chen,* 99 F.3d 1495, 1501 (9th Cir. 1996) (quotations omitted). In other words, if the communication concerns legal rights or obligations, or seeks or conveys advice based upon the attorney's knowledge of and experience with the law, the communication is presumed to be privileged. *Id. See also Baklid-Kunz v. Halifax Hosp. Med. Ctr.,* 2012 U.S. Dist. LEXIS 158944, *8 (M.D. Fla. Nov. 6, 2012) ("Communication between corporate client and outside litigation counsel are cloaked with a presumption of privilege."); *Willnerd v. Sybase, Inc.,* 2010 U.S. Dist. LEXIS 135781, *9 (D. Idaho Dec. 22, 2010) ("Communications between a client and its outside counsel are presumed to be made for the purpose of obtaining legal advice."); *Ideal Elec. Co. v. Flowserve Corp.,* 230

F.R.D. 603, 607 (D. Nev. 2005) (same); Paul R. Rice, 1 ATTORNEY-CLIENT PRIVILEGE IN THE UNITES STATES, § 5:14 (2d ed. 1999) ("the unstated operating presumption in situations involving outside retained counsel with limited responsibilities to the client (e.g., strictly legal capacity as opposed to business responsibilities because of a corporate position that he holds), is that the consultations were held for the purpose of obtaining legal advice or assistance."). Ultimately, the determination turns largely on whether the advice is "business" or "legal" in nature. *Lindley*, 267 F.R.D. at 391. "Calling the lawyer's advice 'legal' or 'business' advice does not help in reaching a conclusion; it *is* the conclusion." *Chen*, 99 F.3d at 1502 (emphasis original).

Here, Chartis retained outside legal counsel because of the time limited policy limits demand from Plaintiff's attorney. Chartis needed legal advice and assistance regarding the law cited in the demand letter. After conferring with Chartis's outside legal counsel, Mr. Reed anticipated that litigation would ensue if the time limited demand was not met. Once Mr. Reed evaluated Plaintiff's claim as falling within tortfeasor Branum's liability limits, and that was communicated to Plaintiff's counsel, he expected that litigation would be commenced against Chartis. From that point forward, Chartis and its outside legal counsel were preparing for litigation. Most of the communications between Chartis and its legal counsel were related to legal advice and strategy, not just general business advice.

Here, Chartis's outside legal counsel provided numerous communications that contain legal advice concerning the state of Oklahoma law on various topics. For example, the privilege log shows that a letter from outside legal counsel, dated August 16, 2012 [Claim File 445-450], contains advice about the state of the law on subrogation, bad faith and litigation discovery issues. This obviously transmits legal opinions and advice, based

upon the author's knowledge of the law. Further, the communication discusses discovery issues related to <u>likely litigation with Plaintiff</u>. This letter is not subject to discovery as it is protected work product and a confidential attorney-client communication. The privilege log also discloses the existence of letters from outside legal counsel regarding Chartis's right to intervene in the underlying lawsuit against tortfeasor Branum [Claim File 428-428, 438-439], as well as Chartis's subrogation rights under the UM statute [Claim File 386-423, 426-428, 429-437]. These letters concerning an insurance company's right to participate in litigation are necessarily created in anticipation of such litigation. The letters are also protected attorney-client communications.

The communications shown on the privilege log contain legal advice from Chartis's outside counsel retained because of its knowledge of Oklahoma law. Even if some of the communications related to advice concerning claims handling, as long as the purpose of the advice is to "bring the[] client[] into compliance with the law," the communications are "therefore within the scope of the attorney-client privilege." *Chen*, 99 F.3d at 1502. Further, even where communications contain a business-related component, as long as the communication pertains to legal advice, it is privileged. *See Lindley v. Life Investors Ins. Co. of Am.*, 2010 U.S. Dist. LEXIS 41798, *17 (N.D. Okla. Apr. 28, 2010) ("Even if there was a business purpose for defendant to seek legal advice, this does not change the fact that the Goldstein Memorandum contains legal advice that defendant treated as a confidential communication between itself and its in-house counsel."). The communications listed on the privilege log are not subject to discovery.

Likewise, many of the claim note entries are privileged. Some of these entries summarize confidential discussions with outside legal counsel regarding aspects of

Oklahoma law, including intervention, subrogation, and bad faith [*e.g.,* Claim File 930-931].

Other claim note entries copy and paste the substance of attorney-client communications

into the claim notes [*e.g.,* Claim File 926-927]. The attorney-client privilege protects not

only communications, but also a corporate-client employee's "memoranda or notes on such

communications." *John B. v. Goetz*, 879 F. Supp. 2d 787, 893 (M.D. Tenn. 2010) (citing

*Upjohn*, 449 U.S. at 391). Thus, because the underlying communication is protected, Mr.

Reed's claim note entries—either summarizing or copying the communications—are

likewise protected from discovery.

The attorney-client privilege also constrains the extent and manner in which factual

information contained in a privileged communication may be disclosed. In *Sinclair Oil*

*Corp. v. Texaco, Inc.,* 208 F.R.D. 329 (N.D. Okla. 2002), the Court:

> However, communications between the attorney and the client, even when
> the parties are discussing factual information, are protected by the attorney
> client privilege. The factual information discussed by the attorney and the
> client is discoverable, but the Court will generally not permit a party to
> inquire into the nature of the communications made between the attorney
> and the client, and the Court generally does not permit the deposition of the
> attorney. Instead, the party conducting discovery is permitted to depose
> witnesses (including the client), and review documents which are available
> to both the parties and the attorneys but which do not constitute the
> communications between the client and the attorney.

*Id.* at 332 (citations omitted).

Here, Chartis received reports and opinions from its outside legal counsel

concerning the underlying litigation. If Plaintiff wishes to discover facts known to Mr. Reed

or Chartis, those facts may be discoverable, but Plaintiff may not discover how those facts

were made known if they were transmitted in a confidential attorney-client

communication. Plaintiff contends that her bad faith action "is premised on Chartis'

inadequate and unreasonable evaluation of her UIM claim." [Doc. 23 at 6]. Plaintiff does not need to discover confidential communications with legal counsel to inquire into these areas of dispute. Plaintiff may depose Mr. Reed and review the non-privileged portions of the claim file to discovery the extent and nature of the investigation and evaluation.

The Magistrate Judge's order does not address these contentions. In the event the Court is unable to rule upon the applicability of the attorney-client privilege as to the listed documents, Chartis recommends the Court review the documents *in camera*. The Court should modify the Magistrate Judge's Order to hold that discovery of privileged materials is not allowed.

In conclusion, Chartis respectfully submits that the Magistrate's Order should be modified in part because the Order allows discovery of post-litigation investigation conduct that cannot be used to support Plaintiff's bad faith claim. The Order also apparently allows discovery of privileged documents and information. This Court should modify the Order according the legal principles outlined above.

## CERTIFICATE OF SERVICE

I hereby certify that on the 18th day of March, 2014, I electronically transmitted the foregoing document to the Clerk of the Court using ECF System for filing and transmittal of a Notice of Electronic Filing to the following ECF registrants:

Donald E. Smolen, II, OBA #19944
Laura M. Lauth, OBA #22619
SMOLEN, SMOLEN & ROYTMAN, PLLC
701 S. Cincinnati Avenue
Tulsa, Oklahoma 74119
(918) 585-2667 P
(918) 585-2669 F
donaldsmolen@ssrok.com
lauralauth@ssrok.com

/s/ Randall E. Long